James Milton MALONE, James D. Malone, Milton C. Malone, Phillip G. Malone, and Mary Elizabeth Johnson, Appellants,

v.

Christopher FOSTER, M.D., Bill Christensen, M.D., and Baylor University Medical Center, Appellees.

No. 05–95–00754–CV.

Court of Appeals of Texas, Dallas.

April 23, 1997.

---

**OPINION**

OVARD, Justice.

In this medical negligence case, appellants James Milton Malone, James D. Malone, Milton C. Malone, Phillip G. Malone, and Mary Elizabeth Johnson appeal from a take-nothing judgment in favor of appellees Christopher Foster, M.D., Bill Christensen, M.D., and Baylor University Medical Center. In eight points of error, appellants contend that the trial court erred in: (1) excluding certain testimony from four witnesses; (2) granting summary judgment in favor of Baylor on appellants' cause of action for intentional destruction of evidence; (3) failing to take judicial notice of certain nursing rules and regulations; and (4) failing to exclude two potential jurors for cause. We affirm.

**Factual and Procedural Background**

In late November of 1990, sixty-two-year-old James Milton Malone (Malone) began experiencing pain in one of his shoulders. In early December, Malone developed a fullness in his right chest area. By December 13th, Malone's left leg was dragging periodically, his right little finger would occasionally go numb, and he could not raise his right arm above his head. From the end of November to the middle of December, Malone saw five different doctors. Two doctors thought it was possible Malone had bursitis; another doctor diagnosed a possible rotator cuff tear.

Malone's condition worsened on Sunday December 16th. On the morning of December 17th, one of Malone's sons took him to the emergency room at Baylor University Medical Center. Hospital records indicate that Malone's "chief complaint" at that time was difficulty moving his extremities. Doctors Foster and Christensen examined Malone, and Malone told them that he was having pain in his shoulders, back, hands, and legs; that his fingers were numb; and that his left leg was dragging. Malone was admitted to Baylor for testing. Foster and Christensen initially diagnosed Malone with a kidney infection.

Charles W. McGarry, Law Offices of Charles W. McGarry, Dallas, for Appellants.

James M. Stewart, Burford & Ryburn, Joann N. Wilkins, Burford & Ryburn, L.L.P., Richard F. Werstein, Werstein & Wilson, Dallas, for Appellees.

Before OVARD, MALONEY, and WRIGHT, JJ.

At about 11:30 on Tuesday morning, December 18th, Malone got out of his hospital bed to go to the bathroom. He testified that he took a step or two, but his legs quit moving and he fell. Malone was unable to roll over and could not get up. He had not had that problem with his legs before. He yelled for help, and three people, including Nurse Connie Chason, assisted him back into bed. Malone testified that he told Chason that his legs "shut down" and would not work at all. He further testified that Chason "was writing everything down as I told her." Malone never saw the piece of paper on which she wrote.

Chason did not document in the nursing record the reason for Malone's fall. She made the following note in the nursing record at 11:30 a.m. on the 18th:

> Patient found by unit assistant, on floor, yelling. Assisted back to bed.... Remains alert, & oriented x3. Scrape noted to right knee. Patient reports bumping right side of head & right shoulder. No bruise, abrasion noted.... Verbalizes understanding of need to call for assistance. MD notified.

Hospital policy required Chason to fill out a patient occurrence report, or incident report, when a patient was injured, and Chason testified that she did so in Malone's case. The form for the patient occurrence report did not specifically ask why a patient fell. Chason testified that her normal practice when a patient fell would be to ask the patient what had happened and write down the reason. Chason testified that if Malone had told her why he fell, she would have noted the reason on both the chart and the patient occurrence report. Because Baylor keeps patient occurrence reports for only six months, the report in Malone's case was not available when appellants filed suit in February 1992.

Foster examined Malone shortly after the fall and asked him what had happened. Malone testified that he told Foster he had fallen while on his way to the bathroom and that he could not get up. Foster examined Malone's legs and sent him for more tests.

Malone admitted on cross-examination that he did not specifically tell Foster he was paralyzed; instead, he told him that he had fallen and was unable to get up.

Foster first learned on December 20th that Malone was unable to move his legs. While examining Malone, Foster asked him to sit up and move his legs, and Malone told him that he could not move his legs. Foster immediately called Christensen. Foster testified that, before the 20th, Malone had not mentioned to him that his legs did not move. Christensen also testified that, prior to the 20th, Malone never told him that he was unable to move his legs.

Later on the 20th, Malone saw a neurosurgeon and underwent surgery. Malone had a spinal epidural abscess, a neurological emergency. A delay in diagnosing such a condition could influence a patient's prognosis and outcome. After surgery, Malone was a quadriplegic. His condition has gradually improved, especially in his upper extremities.

Malone and his four adult children sued Foster, Christensen, and Baylor. Appellants alleged that the two doctors were negligent in their care of Malone. Although no nurses were sued, appellants pleaded a cause of action for nursing negligence. Appellants asserted that Nurse Chason and three other nurses were negligent in caring for Malone. Appellants' basic complaint against the doctors and nurses is their failure to timely recognize that Malone's problem was a neurological one. Appellants asserted that Baylor was vicariously liable for the actions of its doctors and nurses. In addition, appellants pleaded a direct cause of action against Baylor for intentional destruction of evidence, alleging that Baylor wrongfully destroyed the patient occurrence report filled out when Malone fell.[1]

The trial court granted Baylor's motion for partial summary judgment regarding the cause of action for intentional destruction of evidence. Appellants' claims of negligence on the part of the doctors and nurses proceeded to a jury trial. After a lengthy trial,

---

1. Appellants further alleged that Baylor's destruction of the patient occurrence report was negligence and gross negligence; but appellants do not complain on appeal about the trial court's disposition of that cause of action.

the jury found that none of the doctors or nurses was negligent. The trial court signed a take nothing judgment in accordance with the jury's verdict. This appeal followed.

### Sherrie Watkins

In their first point of error, appellants assert that the trial court erred in excluding Sherrie Watkins's testimony that Baylor destroyed the patient occurrence report regarding Malone's fall. Watkins, a nurse, is an administrator at Baylor. Through Watkins, appellants wanted to present evidence that Baylor had a policy to destroy patient occurrence reports after six months and that such reports were destroyed even if litigation was pending.

■ The intentional destruction, or spoliation, of evidence relevant to a case raises a presumption that the destroyed evidence would not have been favorable to its destroyer. *American Maintenance & Rentals, Inc. v. Estrada*, 896 S.W.2d 212, 222 (Tex.App.— Houston [1st Dist.] 1995, no writ). In their brief, appellants state that they requested a jury instruction on the spoliation presumption, but the trial court denied their request. Appellants do not bring a point of error regarding the court's denial of the instruction and admit that they waived any such error by failing to timely object to the charge. Nevertheless, several of appellants' points of error, including this one, involve the exclusion of evidence they attempted to put on to show that Baylor intentionally destroyed evidence and thus entitle them to an instruction for the jury to presume that the destroyed evidence would not have been favorable to Baylor.

The trial court held a hearing outside the presence of the jury regarding the admissibility of Watkins's deposition. At that hearing, the judge referred to three topics contained in the deposition: (1) Watkins's job and duties; (2) Baylor's policies regarding creation of patient occurrence reports; and (3) the destruction of patient occurrence reports after six months and whether destruc-

tion occurs even when a lawsuit is filed. Appellees' counsel objected on several grounds to the portions of Watkins's deposition regarding the creation of patient occurrence reports and the destruction of such reports. The court overruled appellees' objection to the testimony about the creation of the reports, but excluded the portion of the deposition regarding destruction of the reports.

The approved portions of Watkins's deposition were read to the jury. Watkins testified by deposition that in December of 1990, policies and procedures existed at Baylor for the reporting of incidents involving an injury or potential injury to a hospital patient. If a patient fell in the hospital, an occurrence report would be generated by the nurse taking care of the patient or the nurse who found the patient. The nursing staff had no discretion in deciding whether to fill out a patient occurrence report after a fall. The reports contained factual information about the fall. Typically, if a patient had said why he fell, that information would be included in the report. The reports are designed to be used for communication to the administrator and not for follow-up patient care. Watkins kept these reports in her office for six months.

■ To complain on appeal that evidence was *erroneously excluded*, the appellant must show that the excluded testimony is preserved in a bill of exceptions. *Morris v. Short*, 902 S.W.2d 566, 570 (Tex.App.— Houston [1st Dist.] 1995, writ denied); *see* Tex.R.App. P. 52(b). At no time did appellants' counsel make a bill of exceptions to develop the substance of the excluded portion of Watkins's deposition. Watkins's deposition was, however, on file with the trial court. It was attached to Baylor's motion for partial summary judgment on appellants' claim for intentional destruction of evidence.[2] But the deposition's being on file with the trial court is not sufficient to make a proper bill of exceptions. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex.

---

2. Appellants also supplemented the appellate record with a certified copy of the deposition. Appellants claimed that it should have been included with the original exhibits filed with this Court.

There is nothing in the record to indicate that Watkins's deposition was ever marked as an exhibit.

1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *see also Roberts v. U.S. Home Corp.*, 694 S.W.2d 129, 137–38 (Tex.App.—San Antonio 1985, no writ); *Ramos v. Garcia*, 676 S.W.2d 214, 216 (Tex. App.—Corpus Christi 1984, no writ).

In *McInnes*, the appellant complained about the exclusion of a portion of a deposition. *McInnes*, 673 S.W.2d at 187. After a hearing on the admissibility of the deposition, the trial court had ruled that the deposition was inadmissible. The appellant's counsel did not attempt to perfect a bill of exceptions containing the excluded evidence. But the deposition had been filed with the trial court prior to trial. The supreme court rejected the appellant's argument that the deposition on file with the trial court was a sufficient bill of exceptions and held that the appellant had not preserved error. *Id.*

Likewise, in this case, appellants' point of error regarding the exclusion of Watkins's testimony has not been properly preserved. That her deposition was on file with the trial court as summary judgment evidence and is part of the record on appeal is not sufficient to make it a proper bill of exceptions. *See id.* (citing *Wise v. Pena*, 552 S.W.2d 196, 202 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd), for proposition that summary judgment evidence is not a substitute for bill of exceptions). We overrule appellants' first point of error.

### William Jennings

In their second point of error, appellants assert that the trial court erred in excluding William Jennings's testimony that Baylor destroyed the patient occurrence report concerning Malone. At the time of Malone's hospitalization, Jennings was Baylor's director of risk management. After appellants rested, their counsel requested "a limited reopening for the purpose of making a Bill of Exceptions, to ... offer Mr. Jennings['s] testimony in connection with plaintiff's claim of

destruction of the incident report." Appellants offered Jennings's entire deposition, plus exhibits, for purposes of a bill of exceptions. Counsel for appellees noted several objections to the timing of the bill and to Jennings's testimony. The trial judge then stated, "I don't need to rule." Jennings's deposition was read into the record.

The record before this Court does not reflect that appellants ever attempted to actually offer Jennings's testimony into evidence. Nor does it contain a ruling from the trial judge on the admissibility of his testimony. The record does contain a reference to Jennings's potential testimony. After appellants' counsel finished questioning Baylor attorney Robert Cook outside the presence of the jury, he stated, "I assume that I will be precluded from asking Mr. Jennings similar questions, since he's not an attorney." Appellees' attorney responded, "Judge, when those questions come up, we'll address them, the relevancy of those questions, too." Appellants never offered Jennings's testimony during the trial before the jury.

■ To complain on appeal that the trial court erroneously excluded evidence, the appellant must show that he attempted to introduce the evidence and obtained an adverse ruling from the judge. *Estate of Veale v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 242–43 (Tex.App.—Houston [14th Dist.] 1995, writ denied). This is true even if the record shows that the appellant made a bill of exceptions concerning the evidence. *See Waldon v. City of Longview*, 855 S.W.2d 875, 880 (Tex.App.—Tyler 1993, no writ); *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 827 (Tex. App.—Austin 1990, writ denied); *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.*, 715 S.W.2d 658, 662 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Winkel v. Hankins*, 585 S.W.2d 889, 892 (Tex.Civ.App.—Eastland 1979, writ dism'd).[3] Our record does not show that appellants ever attempted to offer

---

3. Although some courts have concluded that an appellant preserved a complaint about the exclusion of evidence even though the evidence was never offered into evidence, those cases are distinguishable. *See, e.g., Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 270–71 (Tex.App.—El Paso 1994, writ denied) (judge ruled evidence inadmissible several times before and during trial); *Guentzel v. Toyota Motor Corp.*, 768 S.W.2d 890, 897 (Tex.App.—San Antonio 1989, writ denied) (on written, pretrial objections to evidence, there was handwritten, initialed note sustaining objections).

Jennings's deposition testimony into evidence or show that the trial court made a ruling excluding Jennings's testimony.[4] Accordingly, we overrule appellants' second point of error.

## Robert Cook

In their third point of error, appellants contend that the trial court erred in excluding attorney Robert Cook's testimony regarding instructions he gave to Baylor's nurses because the attorney/client privilege does not apply to such communications. Cook does ninety-five percent of his work for Baylor Healthcare System and its subsidiaries. Appellants wanted to show that Cook had lectured Baylor's nurses to put information about patient falls only in patient occurrence reports.[5] Outside the presence of the jury, counsel for appellants asked Cook numerous questions about his practice. Counsel for appellees objected to most of the questions, and the trial judge sustained most of the objections. When an objection to a question was sustained, Cook did not answer the question.[6]

In their brief, appellants do not set out any specific questions that they were prevented from asking at trial. We construe appellants' point of error to complain of the court's denying permission to ask the following question, the only question directed at Cook's instruction of nurses:

Q. Have you counseled or lectured nurses at Baylor regarding what information should and should not go on patient records regarding details of patient falls, or anything similar to that?

[Appellees' counsel]: Your Honor, not only is it multifarious, and we would object on that basis. We object it's not relevant. It's not relevant to any issue in this case. What this witness may have lectured or instructed with regard to anything at any time with regard to any nurse. We further [i]nvoke the attorney/client privilege. We further argue that the question is va[gue] and nonspecific in terms of time and content. Relevancy, if I didn't say that also.

THE COURT: Sustained.

■ Although appellees urged several objections to this question, appellants complain on appeal only of the exclusion of the evidence on the basis of the attorney/client privilege. Because the trial court could have sustained appellees' objection on grounds other than privilege, and appellants have not challenged all possible grounds for sustaining the objection, we conclude that appellants have waived this point of error. *Cf. Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77, 83 (Tex.1977) (judgment must be affirmed if appellant does not challenge each separate and independent ground of recovery). We overrule appellants' third point of error.

## Jo Beth Speed

In their fourth point of error, appellants contend that the trial court erred in excluding the testimony of Jo Beth Speed regarding a statement Malone made to her about the reason for his fall. Speed, a friend of Malone's, visited him in the hospital on December 19th, the day after he fell. Speed testified that Malone was very upset. When appellants' counsel asked Speed what Malone

4. We do not have the complete statement of facts. In filing a partial statement of facts, appellants complied with rule of appellate procedure 53(d). Thus, we presume that nothing omitted from the record is relevant to any of the points specified or to the disposition of the appeal. TEX.R.APP. P. 53(d); *see Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990).

5. Appellants suspected that Cook had given such a lecture at Baylor based on an article he wrote about twenty years ago titled, "Nursing Malpractice Law," in which Cook suggested that details about patient falls should be noted only on separate documents that do not become part of the patients' medical records.

6. During oral argument, counsel for appellants argued that the trial court did not permit Cook to answer the questions and, thus, did not allow them to create a record of what his testimony would have been. The only point of error appellants have brought concerning Cook is that the trial court erred in excluding his testimony because the attorney/client privilege did not apply to the instructions he gave to Baylor's nurses. Nowhere in their appellate brief do appellants complain that the trial court erred by prohibiting them from making a record of Cook's testimony. *See* TEX.R.APP. P. 74(d).

was concerned about, the trial court sustained appellees' hearsay objection.

Outside the presence of the jury, Speed testified that on the 19th Malone was extremely concerned because he had fallen when trying to get out of bed. Speed asked Malone why he had fallen, and Malone replied that his knees or legs had collapsed and that he could not get back into bed by himself. The trial court again sustained appellees' hearsay objection and prohibited Speed from testifying about what Malone told her about the fall. Speed was permitted to testify that, on the 19th, Malone told her he could not move his legs and toes.

Appellants contend that the trial court erred in excluding Speed's testimony because Malone's statement about the fall was an excited utterance, an exception to the hearsay rule. *See* Tex.R. Civ. Evid. 803(2). Rule 803 defines an excited utterance as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* Appellees, on the other hand, contend that Malone's statement to Speed does not fit within the excited utterance exception. We agree with appellees.

The decision to admit or exclude evidence rests within the discretion of the trial court. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995). Such a determination will not be overturned absent an abuse of discretion. *North Dallas Diagnostic Ctr. v. Dewberry,* 900 S.W.2d 90, 93 (Tex. App.—Dallas 1995, writ denied). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont,* 923 S.W.2d at 558.

■ In determining whether a statement is an excited utterance, the ultimate question is whether the statement was the result of reflective thought or rather a spontaneous reaction to an exciting event. *Texas Util. Elec. Co. v. Gold Kist, Inc.,* 817 S.W.2d 749, 755 (Tex.App.—Eastland 1991), *rev'd on other grounds,* 830 S.W.2d 91 (Tex.1992). A statement that is simply a narrative of past events or acts, as distinguished from a spontaneous utterance, does not qualify as an excited utterance regardless of how soon af-

ter the event it is made. *First Southwest Lloyds Ins. Co. v. MacDowell,* 769 S.W.2d 954, 959 (Tex.App.—Texarkana 1989, writ denied). The only requirement concerning time is the necessity that the statement be made while in a state of excitement caused by the startling event. *City of Dallas v. Donovan,* 768 S.W.2d 905, 908 (Tex.App.— Dallas 1989, no writ). The circumstances must show that it was the event speaking through the person and not the person speaking about the event. *First Southwest,* 769 S.W.2d at 959.

■ Here, Malone fell at 11:30 on the morning of December 18th. Malone told Speed about his fall sometime on the following day before noon. Although Malone was upset and concerned when he spoke to Speed, his statement to her about the reason for his fall on the previous day could not have been a spontaneous reaction to the fall. It was rather a narrative of past events. We conclude that the trial court did not abuse its discretion in excluding Speed's testimony. We overrule appellants' fourth point of error.

### Summary Judgment

In their fifth point of error, appellants contend that the trial court erred in granting appellees' motion for partial summary judgment on appellants' claim for intentional destruction or spoliation of evidence. Appellants pleaded a cause of action for intentional destruction of evidence, alleging that Baylor wrongfully destroyed the patient occurrence report regarding Malone's fall at a time when Baylor knew or should have known it would likely be sued concerning the care Malone received at Baylor. According to appellants, the patient occurrence report contained information about the reason for the fall not found in any medical record.

Baylor filed a motion for partial summary judgment, asserting the following grounds: (1) Texas does not recognize an independent tort of spoliation of evidence; (2) Baylor owed no duty to preserve the patient occurrence report; (3) such reports are privileged and not discoverable; and (4) if such a tort exists, appellants' spoliation claim was premature prior to trial of their medical negli-

gence claims because they had not yet suffered any injury. The trial court granted Baylor's motion without specifying the grounds.

The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). If the judgment granting the motion for summary judgment does not specify upon which ground it is based, to obtain reversal, the appellant must show that all of the independent grounds alleged are insufficient to support the judgment. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

At the time appellants filed their brief, no Texas appellate court had specifically addressed the issue of whether or not the intentional destruction of evidence is an independent tort. *See, e.g., Brewer v. Dowling*, 862 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, writ denied) (holding that trial court did not abuse its discretion by refusing to give spoliation jury instruction, and stating as dicta that Texas does not recognize spoliation tort); *Diehl v. Rocky Mountain Communications, Inc.*, 818 S.W.2d 183, 184 (Tex.App.—Corpus Christi 1991, writ denied) (intentional spoliation claim was inappropriate when plaintiff injured in on-the-job-fall from ladder had no pending or prior claim against ladder's manufacturer and thus spoliation by employer did not prevent him from pursuing claim against manufacturer). Thus, appellants rely on opinions from several other jurisdictions which recognize intentional destruction of evidence as an independent tort.[7] They also argue that a cause of action for intentional destruction of evidence would be nothing more than a form of the cause of action for intentional interference with a property right, specifically, the right to sue for tort damages.

■ Texas courts have employed other methods to discourage or remedy spoliation

of evidence, for example: (1) sanctions for discovery abuse under rule of civil procedure 215; or (2) an instruction that the jury must presume that the destroyed evidence would not have been favorable to its destroyer. *Ortega v. Trevino*, 938 S.W.2d 219, 220–21 (Tex.App.—Corpus Christi 1997, n.w.h.); *see American Maintenance*, 896 S.W.2d at 222; *Brewer*, 862 S.W.2d at 159; *San Antonio Press, Inc. v. Custom Bilt Mach.*, 852 S.W.2d 64, 67 (Tex.App.—San Antonio 1993, no writ). Further, the destruction of evidence in connection with a pending investigation or official proceeding can be a criminal offense. *Ortega*, 938 S.W.2d at 221; *see* Tex. Penal Code Ann. § 37.09 (Vernon 1994).

Recently, in *Ortega v. Trevino*, the Corpus Christi Court of Appeals addressed the issue of whether Texas recognizes a cause of action for spoliation of evidence. Ortega sued Doctor Trevino, alleging that the doctor failed to provide him with the medical records of his daughter's birth and that the records had been intentionally or negligently destroyed. *Ortega*, 938 S.W.2d at 219–20. Ortega further alleged that he had brought an earlier medical malpractice suit against Trevino and another doctor because Ortega's daughter was injured during her birth. *Id.* at 219. According to Ortega's petition, the absence of the medical records imposed "an insurmountable hardship" in the preparation of his malpractice suit. *Id.* at 220.

Trevino specially excepted to Ortega's petition for failure to state a cause of action on the ground that Texas does not recognize an independent cause of action for intentional or negligent spoliation of evidence. *Id.* The trial court sustained the special exception and dismissed the spoliation suit. *Id.* After analyzing the spoliation tort in other states and the existing alternatives to the tort in Texas, the court of appeals concluded that Texas courts should adopt the independent tort of spoliation of evidence and concluded that the trial court erred by dismissing Ortega's suit on the basis that Texas does not recognize the cause of action. *Id.* at 223.

7. At present, just seven states recognize a cause of action for spoliation of evidence: Alaska, California, Florida, Illinois, Kansas, New Jersey, and Ohio. *See Ortega v. Trevino*, 938 S.W.2d 219, 221–22 (Tex.App.—Corpus Christi 1997, n.w.h.).

■ We decline to follow *Ortega.* Texas courts are obligated to follow only higher Texas courts and the United States Supreme Court. *Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993). The Texas Supreme Court has never recognized an independent cause of action for intentional spoliation of evidence. Absent controlling supreme court precedent, we decline to expand the law to recognize such a cause of action. Changes in the common law should be left to the Texas Supreme Court or the Texas Legislature. *See Thompson v. El Centro Del Barrio,* 905 S.W.2d 356, 358–59 (Tex.App.—San Antonio 1995, writ denied); *Gutierrez v. Karl Perry Enters., Inc.,* 874 S.W.2d 103, 107 (Tex.App.—El Paso 1994, no writ). We cannot conclude that the trial court erred in granting Baylor's motion for partial summary judgment. We overrule appellants' fifth point of error.

### Judicial Notice

■ In their sixth point of error, appellants contend that the trial court erred in failing to take judicial notice of the rules and regulations of the Texas State Board of Nursing Examiners. *See* 22 TEX. ADMIN. CODE §§ 217.11, 217.13 (West 1996) (board of nursing examiners' standards of professional nursing practice and rules regarding unprofessional conduct). Initially, we note that appellants' counsel did not actually ask the court to take judicial notice of any nursing rules or regulations. Instead, he asked the court for permission to "talk about the nurse practice act and the rules and regulations governing nurses." *See* TEX.REV.CIV. STAT. ANN. arts. 4513–4528c (Vernon Pamph. 1997) (Nurse Practice Act). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling he desired the court to make. TEX.R.APP. P. 52(a); *see* TEX.R. CIV. EVID. 204 ("court upon its own motion may, or upon the motion of a party shall, take judicial notice ..."). By not specifically requesting the trial court to take judicial notice of any nursing rules or regulations, appellants have waived this point of error.

Even if we consider appellants' request to be a request for judicial notice, appellants have waived any error for another reason. Appellants' counsel asked the judge if he could talk about the rules and regulations governing nurses just prior to the testimony of appellants' nursing expert, Karen Sacks. Appellees objected because appellants had not pleaded any violation of a statute. The judge sustained appellees' objection. Then the following occurred:

[Appellants' counsel]: Well it is relevant, Judge, because it establishes the standard of care. The standard of care can come from many sources in these types of cases.

THE COURT: I have to look into that then. What you're saying is it's not relevant because there's no pleading?

[Appellants' counsel]: I'm not introducing it for the purpose of establishing negligence per se. I'm introducing it as some evidence of the standard of care.

THE COURT: Then I will reconsider that. But for this witness' purposes, do you want me to—a decision on that?

[Appellants' counsel]: It's not critical.

THE COURT: Then let's proceed while we've got a chance.

■ To preserve a complaint for appellate review, in addition to presenting a timely request to the trial court, it is also necessary for the complaining party to obtain a ruling on the request. TEX.R.APP. P. 52(a); *see Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex. 1991). In this case, although the trial judge initially denied appellants' request, he then announced that he had decided to reconsider his ruling. Further, when the trial judge asked if counsel needed a decision before proceeding with Sacks's testimony, counsel declined the offer. We conclude that, by not obtaining a ruling after the trial judge announced that he would reconsider his initial ruling, appellants have not preserved this point of error for our review. We overrule their sixth point of error.

### Jury Selection

In their seventh point of error, appellants contend that the trial court erred in failing to strike potential juror Ron DeLay for cause. In their eighth point of error, appellants contend that the trial court erred in failing to strike potential juror Thelma Grady for cause. During voir dire, DeLay indicated

that he might have difficulty awarding adult children monetary damages for their father's impairment. DeLay also stated, however, that he could be fair in considering such damages. Grady worked for the Baylor Institute of Rehabilitation, part of the Baylor Healthcare System. Even though Baylor University Medical Center had the same parent company as Grady's employer, Grady stated that she could be fair.

Appellants challenged DeLay for cause, and the trial judge denied the request. In voicing an objection to Grady, appellants' attorney did not specifically use the term "challenge for cause." But the trial court responded, "[T]here's not a law or automatic strike for that person, I mean, for cause, I would have to deny that." Thus, the trial court interpreted counsel's comments as a challenge for cause. We will do likewise.

After the parties exercised their peremptory challenges, counsel for appellants made the following objection:

> Comes now, prior to impaneling the jury panel, plaintiff complains to the Court's action on failing to strike for cause Kahle [8] and DeLay; and makes it for the reason expressed for the challenge for cause earlier. And as a result of the Court's failure to grant the challenge for cause to these two, plaintiff was unable to strike No. 10 [Johnson], and No. 29 [Moss], both who plaintiff finds objectionable.

Appellants contend that the trial court should have granted their challenges for cause to DeLay and Grady because they were disqualified to serve due to bias or prejudice in favor of or against a party in the case. *See* Tex. Gov't Code Ann. § 62.105(4) (Vernon 1988).

 Assuming, without deciding, that DeLay and Grady were disqualified to serve, the trial court's refusal to excuse an unqualified juror does not necessarily constitute harmful error. *Hallett v. Houston Northwest Medical Ctr.*, 689 S.W.2d 888, 889–90 (Tex.1985); *White v. Dennison*, 752 S.W.2d 714, 718 (Tex.App.—Dallas 1988, writ denied). The harm occurs only if the party uses all of his peremptory challenges and is thus prevented from striking other objectionable jurors from the list because he has no additional peremptory challenges. *Hallett*, 689 S.W.2d at 890. Consequently, it is incumbent upon the complaining party, prior to exercising any peremptory challenges, to advise the trial court of the following two things: (1) that he would exhaust his peremptory challenges, and (2) that after exercising his peremptory challenges, specific objectionable jurors would remain on the jury list. Any harmful error occurs at the point when the court is made aware that objectionable jurors will be chosen. The complaining party waives any error by not timely bringing such error to the attention of the trial court prior to making his peremptory challenges. *Id.*

In this case, appellants failed to advise the court, prior to making their peremptory challenges, that they would exhaust their peremptory challenges and also that, after doing so, specific objectionable jurors would remain on the jury list. Additionally, appellants did not even mention Grady at the time they made their untimely objection. For these reasons, appellants waived any error in the trial court's refusal to strike DeLay and Grady for cause. *See id.* We overrule appellants' seventh and eighth points of error.

We affirm the trial court's judgment.

---

**8.** Appellants did not challenge prospective juror Kahle for cause.