COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-356-CR

  
LEON MARTINEZ                                                                   APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
------------
 
FROM THE 371ST 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
------------
        Appellant 
Leon Martinez appeals from his conviction for assault causing bodily injury to a 
family member. In three points, he challenges the admissibility of trial 
testimony from three witnesses. We affirm.
        Appellant 
began dating Monica Zapata, the victim, in December 2000. Around August 2001, 
appellant moved in the house Zapata shared with her mother. Around October 2001, 
however, their relationship began to deteriorate, and on December 11, 2001, 
Zapata told appellant that she wanted him to leave.
        The 
following day appellant became angry with Zapata, and they began to argue. 
Appellant would not let Zapata leave for work and took her keys away to prevent 
her from leaving. He also initially refused to let her call her employer to 
explain that she would be absent that day. Later appellant let Zapata call her 
employer.
        After 
she called her employer, Zapata lay down in bed in the other room. Appellant got 
in bed with Zapata and attempted to put his arm around her, but she would not 
let him. Her refusal led to an argument that resulted in appellant’s choking 
Zapata and threatening to kill her. Zapata could not breathe for about thirty to 
sixty seconds, and when appellant finally released her, she went to the bathroom 
and vomited. This incident was the basis of the offense for which appellant was 
charged and convicted.
        In 
appellant’s first and second points, he argues that the trial court erred in 
admitting into evidence extraneous offenses that showed appellant made numerous 
threatening telephone calls to Zapata at home and at work after committing the 
offense and being kicked out of Zapata’s house. Appellant challenges the 
admissibility of the evidence under rules 403 and 404(b). Tex. R. Evid. 403, 404(b). Testimony regarding 
the phone calls came from Zapata; Shonda Stokes, a friend and work colleague of 
Zapata; and Officer Chris Simmons, an investigating officer. We review a trial 
court's ruling admitting testimony under an abuse of discretion standard. Thus, 
we will uphold the trial court's decision if it is within “the zone of 
reasonable disagreement.” Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. 
Crim. App.), cert. denied, 534 U.S. 855 (2001).
        Rule 
404(b) embodies the established principle that a defendant is not to be tried 
for collateral crimes or for being a criminal generally. Tex. R. Evid. 404(b); Nobles v. State, 843 
S.W.2d 503, 514 (Tex. Crim. App. 1992); Booker v. State, 103 S.W.3d 521, 
530 (Tex. App.—Fort Worth 2003, pet. ref’d) (op. on reh'g). Consequently, 
extraneous offenses are not admissible at the guilt-innocence phase of trial to 
prove that a defendant acted in conformity with his character by committing the 
charged offense. Tex. R. Evid. 404(b); Booker, 103 S.W.3d 
at 529; Martin v. State, 42 S.W.3d 196, 199-200 n.2 (Tex. App.—Fort 
Worth 2001, pet. ref'd). An extraneous offense, however, has noncharacter-conformity 
relevance where it has any tendency to make the existence of a fact that is of 
consequence to the determination of the action more or less probable than it 
would be without the evidence. Tex. R. Evid. 401; Powell v. State, 63 
S.W.3d 435, 438 (Tex. Crim. App. 2001). That is, extraneous offense evidence 
that tends to make an elemental or evidentiary fact more or less probable or 
tends to rebut some defensive theory is relevant beyond its tendency to prove a 
person's character or that he acted in conformity therewith. Montgomery v. 
State, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh'g); Johnson 
v. State, 932 S.W.2d 296, 301 (Tex. App.—Austin 1996, pet. ref'd). 
Consequently, evidence of other crimes or extraneous misconduct may be 
admissible to prove motive, opportunity, intent, preparation, plan, knowledge, 
identity, or absence of mistake or accident. Tex. R. Evid. 404(b); Booker, 103 
S.W.3d at 529-30. Such evidence may also be introduced to rebut a defensive 
theory. Powell, 63 S.W.3d at 439-40. “By raising a defensive theory, 
the defendant opens the door for the State to offer rebuttal testimony regarding 
an extraneous offense if the extraneous offense has common characteristics with 
the offense for which the defendant was on trial.” Jones v. State, 119 
S.W.3d 412, 421 (Tex. App.—Fort Worth 2003, no pet.); Roberts v. State, 
29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).
        On 
cross-examination of Zapata, appellant’s counsel asked her if she was afraid 
of appellant, to which she responded that she was afraid of him. Following this 
response, counsel then asked Zapata about several instances since the offense 
when she visited appellant, implying that Zapata was not afraid of appellant. 
The State contends that appellant sought this testimony to show that Zapata was 
not afraid of appellant because the offense never occurred. Furthermore, the 
evidence regarding Zapata’s visiting appellant after the offense could also 
have been introduced to show that appellant did not intend to commit the 
offense: If Zapata had no fear of appellant, then perhaps the offense did not 
occur, and no intent existed.
        In 
response to the testimony, the State sought to rebut appellant’s defensive 
theory with testimony from three witnesses regarding appellant’s repeated 
telephone calls to Zapata following the incident, both at home and work, and 
that appellant threatened Zapata in several of those calls. This evidence would 
allow the State to rebut the theory that Zapata did not fear appellant.
        We 
agree with the State that the extraneous offense evidence was admissible to 
rebut the defensive theory that because Zapata was not afraid of appellant, the 
offense did not occur. The evidence of the phone calls tends to make the 
defensive theory less probable. Although the threatening phone calls do not 
share “common characteristics” with the actual assault offense as charged in 
the indictment, the extraneous offense evidence involves threats, and appellant 
threatened to kill Zapata during the commission of the offense. Thus, the 
circumstances surrounding the offense were similar to the circumstances of the 
extraneous offenses. Furthermore, the extraneous offense evidence also allows 
the State to rebut the presumption that appellant had no intent to commit the 
offense.[2] Accordingly, we hold the trial court’s 
ruling to admit the testimony of the three witnesses under rule 404(b) was 
within the zone of reasonable disagreement.
        Appellant 
also challenges the admissibility of the evidence under rule 403. Tex. R. Evid. 403. If a trial court determines 
that evidence of other crimes or extraneous misconduct has relevance aside from 
character conformity, and a timely, proper rule 403 objection is made, the trial 
court must make a balancing determination under rule 403. Montgomery, 810 
S.W.2d at 388-89. Rule 403 provides that “[a]lthough relevant, evidence may be 
excluded if its probative value is substantially outweighed by the danger of 
unfair prejudice, confusion of the issues, or misleading the jury, or by 
considerations of undue delay, or needless presentation of cumulative 
evidence.” Tex. R. Evid. 403. Only “unfair” prejudice 
provides the basis for exclusion of relevant evidence. Montgomery, 810 
S.W.2d at 389. Unfair prejudice arises from evidence that has an undue tendency 
to suggest that a decision be made on an improper basis, commonly an emotional 
one. Id. A presumption exists that relevant evidence will be more 
probative than prejudicial. DeLeon v. State, 77 S.W.3d 300, 315 (Tex. 
App.—Austin 2001, pet. ref’d). In evaluating the trial court's determination 
under rule 403, a reviewing court is to reverse the trial court's judgment 
“rarely and only after a clear abuse of discretion,” recognizing that the 
trial court is in a superior position to gauge the impact of the relevant 
evidence. Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); Montgomery, 
810 S.W.2d at 389.
        The 
trial court's balancing determination must be measured against the relevant 
criteria by which a rule 403 decision is made. Mozon, 991 S.W.2d at 847. 
The relevant criteria in determining whether the prejudice of an extraneous 
offense substantially outweighs its probative value include:
  
(1) how compellingly the 
extraneous offense evidence serves to make a fact of consequence more or less 
probable—a factor which is related to the strength of the evidence presented 
by the proponent to show the defendant in fact committed the extraneous offense;
 
(2) the potential the other 
offense evidence has to impress the jury “in some irrational but nevertheless 
indelible way”;
 
(3) the time the proponent 
will need to develop the evidence, during which the jury will be distracted from 
consideration of the indicted offense; [and]
 
(4) the force of the 
proponent's need for this evidence to prove a fact of consequence, that i.e., 
does the proponent have other probative evidence available to him to help 
establish this fact, and is this fact related to an issue in dispute.

 
Id. When the relevant 
criteria are viewed objectively and lead to the conclusion that the danger of 
unfair prejudice substantially outweighs the probative value of the proffered 
evidence, the appellate court should declare that the trial court erred in 
failing to exclude it. Montgomery, 810 S.W.2d at 392.
        Whether 
the offense actually occurred was the key issue at trial. The testimony 
regarding the telephone calls makes the defensive theories very unlikely. The 
testimony regarding the telephone calls was also “no more heinous” than the 
assault offense. Taylor v. State, 920 S.W.2d 319, 323 (Tex. Crim. App.) 
(holding evidence of extraneous murder admissible in capital case), cert. 
denied, 519 U.S. 951 (1996). Thus, the evidence was compelling and not 
likely to create such prejudice in the minds of the jury that it would have been 
unable to limit its consideration of the evidence to its proper purpose. Id.
        The 
State questioned three out of six witnesses regarding the telephone 
conversations during guilt-innocence. Approximately fifteen pages of Zapata’s 
seventy-two pages of testimony involved the telephone calls; seven out of 
seventeen pages of Stokes’s testimony involved calls from appellant; and four 
out of five pages of Officer Simmons’s testimony involved the telephone calls. 
Although a majority of Officer Simmons’s testimony and a great deal of 
Stokes’s testimony involved appellant’s calls, the victim’s testimony did 
not focus on appellant’s calls, nor was the subject of the telephone calls the 
main focus of the State’s case in general. The main focus of the case was the 
prosecution of appellant for assault, and the weight of the evidence supporting 
the conviction was overwhelming. Furthermore, the State did not emphasize the 
telephone calls during closing argument, but instead discussed the fact that 
Zapata continued to see appellant because she still loved him and “wanted to 
make things end on a good note.” The trial court also instructed the jury that 
it could only consider the extraneous offense evidence for the limited purpose 
of determining the weight to be given to the witnesses’ credibility or to be 
given a “defensive theory.” The jury was instructed that it could not 
consider the evidence to prove that appellant committed the offense for which he 
was charged. The jury presumably followed the court’s instructions. Bauder 
v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).
        Finally, 
although Zapata testified for the State that she visited appellant after the 
offense because she missed him, this evidence may not have eliminated any doubt 
placed in the minds of the jury regarding whether the offense occurred. As a 
matter of fact, this evidence also had the potential to hurt the State’s case 
because it could lead the jury to question why Zapata still cared for a man who 
choked and threatened to kill her, unless, of course, Zapata fabricated the 
offense. Thus, the State needed to put on the evidence of the telephone calls in 
order to eliminate potential doubt created by the defense in its 
cross-examination of Zapata. Accordingly, we hold the trial court did not abuse 
its discretion in admitting the evidence under rule 403. We overrule 
appellant’s first and second points.
        In 
appellant’s third point, he argues the trial court erred in admitting hearsay 
testimony from Stokes. At trial, Stokes testified that Zapata called her the day 
after the offense and told her what happened. Stokes said Zapata was “crying, 
upset, confused, didn’t know what to do.” The State then indicated that it 
was going to ask about the contents of the conversation, and appellant objected 
on hearsay grounds. The State responded that the testimony fell under the 
excited utterance exception, and the trial court overruled the objection. Stokes 
then testified that Zapata told her that appellant had choked her.
        The 
Texas Rules of Evidence define hearsay as “a statement, other than one made by 
the declarant while testifying at the trial or hearing, offered in evidence to 
prove the truth of the matter asserted.” Tex. R. Evid. 801(d). The rules of evidence 
provide an exception to the hearsay rule for excited utterances. Tex. R. Evid. 803(2). An excited utterance is 
“[a] statement relating to a startling event or condition made while the 
declarant was under the stress of excitement caused by the event or 
condition.” Id. The foundation of this exception is the belief that the 
statements made are involuntary and do not allow the declarant an adequate 
opportunity to fabricate, ensuring their trustworthiness. Reyes v. State, 
48 S.W.3d 917, 919 (Tex. App.—Fort Worth 2001, no pet.).
        When 
determining whether a statement qualifies as an excited utterance, it is not 
dispositive that the statement is an answer to a question or that it was 
separated by a period of time from the startling event; these are merely factors 
to be considered in determining whether the statement is admissible as an 
excited utterance. Wood v. State, 18 S.W.3d 642, 652 (Tex. Crim. App. 
2000); Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995), cert. 
denied, 519 U.S. 826 (1996). More commonly known elements of an excited 
utterance are: (1) the statement must be the product of a startling occurrence; 
(2) the declarant must have been dominated by the emotion, excitement, fear, or 
pain of the occurrence; and (3) the statement must be related to the 
circumstances of the startling occurrence. Couchman v. State, 3 S.W.3d 
155, 158 (Tex. App.—Fort Worth 1999, pet. ref'd). The critical determination, 
however, is “whether the declarant was still dominated by the emotions, 
excitement, fear, or pain of the event” or condition at the time of the 
statement.[3]  Salazar, 38 S.W.3d at 154.
        Although 
the actual assault occurred approximately twenty hours before Zapata told Stokes 
what happened, the evidence shows that Zapata was kept in a constant state of 
fear of appellant from the time of the assault until Zapata spoke with Stokes. See 
Zuliani v. State, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003). After choking 
and threatening to kill Zapata, appellant initially would not let her leave the 
house to go to her doctor’s appointment. After later letting her leave, he 
called her while she was at her appointment. When she returned from her 
appointment, he was at her house. Zapata had her mother force appellant to 
leave. After appellant left, he called her later that day and told her, “Mark 
my word, I’ll see you in the morning.” Zapata then called the police to file 
a report and requested a protective order to keep appellant away from her. 
Zapata became frightened and spent the night at a friend’s house. Appellant 
made approximately seventy calls to Zapata from the day of the offense until the 
following afternoon.
        The 
next morning Zapata called Stokes and asked her to meet her in their work 
parking lot because appellant knew where she worked and she did not feel safe 
walking to the building alone. After arriving to work with Stokes, Zapata told 
Stokes that appellant had choked her. Given the sequence of events following the 
offense, the trial court’s decision to admit the evidence under the excited 
utterance exception was within the zone of reasonable disagreement because 
Zapata was likely still dominated by the emotion, excitement, fear, or pain of 
the occurrence. We overrule appellant’s third point.
        Having 
overruled appellant’s points on appeal, we affirm the trial court’s 
judgment.
 
 
                                                          SAM 
J. DAY
                                                          JUSTICE

 
PANEL F:   DAUPHINOT 
and HOLMAN, JJ.; and SAM J. DAY, J. (Retired, Sitting by Assignment).
 
DAUPHINOT, J. filed a 
concurring and dissenting opinion.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: February 12, 2004



COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-356-CR

  
LEON MARTINEZ                                                                   APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
------------
 
FROM THE 371ST 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
CONCURRING AND 
DISSENTING OPINION
 
------------
        While 
I concur in the result, I dissent from the majority’s holding that a 
complainant’s statements in a telephone conversation twenty hours after the 
exciting event are excited utterances because the complainant was still upset. I 
fear that we have lost sight of the purpose behind the recognition of the 
excited utterance exception.
        An 
excited utterance is not any statement made when a person is “excited” or 
“upset.” For a statement to qualify as an excited utterance, the declarant 
must have been more than upset, more than excited. It follows, then, that 
testimony that the declarant seemed “upset” and “emotional” before she 
uttered the statement is insufficient to satisfy the requirement that the 
declarant be “in the instant grip of violent emotion,” rendering her 
incapable of fabrication.[1]  She must have 
been dominated by the overwhelming emotion arising from the event or condition 
at the time the statement was made.[2] Furthermore, 
the utterance must have been a spontaneous response to an external shock, made 
from impulse rather than reason and reflection.[3] 
“The circumstances must show that it was the event speaking through the person 
and not the person speaking about the event.”[4]
        An 
excited utterance, therefore, is admissible because it is spontaneous and not 
the result of thought or contemplation. In this case, there was nothing 
spontaneous about the complainant’s telephone call to Stokes twenty hours 
after the alleged incident occurred. After the assault but before the telephone 
conversation, events unconnected to the alleged assault occurred. For example, 
the complainant went to a previously scheduled doctor’s appointment alone. 
Additionally, after she returned home, her mother helped her persuade Appellant 
to leave. These two contacts allowed her not only time to discuss the situation 
but also ample opportunity to reflect on it before she called Stokes. Unlike the 
complainant in Zuliani, the complainant in this case did not spend twenty 
hours curled up in a ball and confined with Appellant. She had time and space to 
free herself from any “grip of violent emotion” that she might have 
experienced immediately after the alleged assault.
        The 
complainant called Stokes simply to relate what Appellant had done to her and to 
explain why she wanted Stokes to meet her in the parking lot at work. By no 
stretch of reasoning can the complainant’s part of this conversation be 
contorted into a series of excited utterances.
        The 
statements, however, do fall within rule 803(3) as statements of the 
complainant’s then existing mental, emotional, or physical condition.[5]  In the conversation, the complainant explained 
that she wanted Stokes to meet her at work because she was afraid and injured.[6]  I concur in the result because the statements 
addressed in Appellant’s third point of error were admissible on this ground.
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE

  
DELIVERED: FEBRUARY 12, 2004

NOTES
 
MAJORITY 
NOTES
1. See Tex. R. App. P. 47.4.
2. While the 
State did not specifically argue at trial that the extraneous offense evidence 
was admissible to show intent, we may affirm a trial court’s ruling on any 
ground reasonably supported by the record and that is correct on any theory of 
law applicable to the case. See Villarreal v. State, 935 S.W.2d 134, 138 
(Tex. Crim. App. 1996).
3. Appellant 
only challenges the applicability of the excited utterance exception on these 
grounds.

CONCUR & DISSENT NOTES
1. Zuliani 
v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); King v. State, 
631 S.W.2d 486, 491-92 (Tex. Crim. App.), cert. denied, 459 U.S. 928 
(1982).
2. Zuliani, 
97 S.W.3d at 596.
3. Id. 
at 595.
4. First 
S.W. Lloyds Ins. Co. v. MacDowell, 769 S.W.2d 954, 959 (Tex. 
App.—Texarkana 1989, writ denied); see also City of Houston v. Quinones, 
142 Tex. 282, 177 S.W.2d 259, 262 (1944); Malone v. Foster, 956 S.W.2d 
573, 580 (Tex. App.—Dallas 1997), aff’d, 977 S.W.2d 562 (Tex. 1998).
5. Tex. R. Evid. 803(3).
6. See 
Martinez v. State, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000).