Katherine WASHINGTON, Appellant,

v.

Norris KNIGHT, M.D., Collom & Carney Clinic Association, and Texarkana Memorial Hospital, D/B/A Wadley Regional Medical Center, Appellees.

No. 06–94–00083–CV.

Court of Appeals of Texas, Texarkana.

Argued Oct. 18, 1994.

Decided Nov. 4, 1994.

Rehearing Overruled Nov. 22, 1994.

---

Donald G. Wilhelm, Onstad, Kaiser & Fontaine, Houston, for Katherine Washington.

Edwin E. Wright, III, Stradley & Wright, Dallas, for Norris Knight, M.D., Collom & Carney Clinic Ass'n.

Alan Harrel, Atchley, Russell, Waldrop, Hlavinka, Texarkana, for Texarkana Memorial Hospital.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

BLEIL, Justice.

Katherine Washington appeals from a summary judgment denying her recovery in her suit for damages resulting from wrongful conduct in connection with surgery performed on her husband. On appeal, we are called upon to determine whether she is entitled to recover as a "bystander" and whether a fact question exists as to whether certain parties intentionally inflicted emotional distress upon Katherine Washington. We resolve the legal questions against Washington, but conclude that there are fact questions affecting her claim for intentional infliction of emotional distress.

 A party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). A defendant moving for summary judgment can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded by the plaintiff, or by conclusively establishing each factual element of an affirmative defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). In deciding whether there is a disputed issue of material fact precluding summary judgment, we view all of the evidence in the light most favorable to the nonmovant and resolve all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). If the trial court does not specify the grounds on which it relied in granting the summary judgment, we affirm the summary judgment on appeal if any of the theories advanced in the motions for summary judgment are meritorious. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

We now turn to the summary judgment evidence viewed in the light most favorable to Katherine Washington. Roy Washington was an insulin-dependent diabetic and had peripheral vascular disease. Because of circulatory problems, Roy Washington consented to the amputation of his left leg below the

knee in April 1992. The wound did not heal properly, and Roy Washington remained at Wadley Regional Medical Center and had five more operations without success. During his lengthy stay in the hospital, Roy Washington became of unsound mind. For this reason, the second, third, and fourth follow-up operations were done with Katherine Washington's consent, rather than her husband's. Unhappy with her husband's progress, Katherine Washington began making arrangements to have him transferred to a wound care center in Dallas.

On the morning of July 8, 1992, Paula Young, a nurse at Wadley, where all of Roy Washington's surgeries were performed, told Katherine Washington that Norris Knight, the physician who had performed the previous surgeries, wanted to perform additional surgery on her husband. Katherine Washington refused to consent to the operation, and her refusal to consent angered Young, who ripped out Roy Washington's I.V., saying that if he was not going to have surgery, then he would not need the I.V. Young's conduct made Katherine Washington extremely sad and depressed. Young then left the room and returned with Stan Griffin, another physician who, along with Knight, is associated with Collom & Carney Clinic. Griffin ordered Katherine Washington to sign the consent forms and told her that if she did not sign the forms permitting the surgery that Medicare insurance would not pay the hospital bills, which then exceeded $100,000.00. Katherine Washington became upset and began to cry, but refused to sign the consent form.

On July 8, 1992, Roy Washington seemed to be of unsound mind. He made illogical statements, was confused, and could not recognize his wife of more than fifty years. Nevertheless, Young and Griffin proceeded to obtain Roy Washington's consent. Young read the consent form to Roy Washington, who signed the form where he was told. Nurse Julia McDonald witnessed Roy Washington's signature. Knight performed the nonemergency surgery on Washington that day. Washington died in the recovery room. The immediate cause of his death, as listed on the death certificate, was respiratory arrest.

Katherine Washington sued Knight, Collom & Carney, and Wadley, asserting that her husband lacked the capacity to consent to the surgical procedure and therefore the operation was an assault and battery on her husband, and that Griffin, Young, and McDonald had assisted, overtly participated in, or encouraged this assault and battery. Washington also asserted that there was a conspiracy among Knight, Griffin, Young, and McDonald to commit the assault and battery. In the alternative, Washington alleged that the nurses were negligent and grossly negligent in failing to inform Knight that Roy Washington was not of sound mind on the day of the surgery and that Katherine Washington opposed and refused to consent to the surgery. Katherine Washington seeks to recover damages on her assault and battery, conspiracy, negligence, and gross negligence claims under a bystander theory. She also alleged a right to recover damages for intentional infliction of emotional distress. The trial court granted the defendants' motions for summary judgment. We now proceed to apply the law to the summary judgment evidence.

*Recovery as a "Bystander"*

Washington asserts that the trial court erred in granting summary judgment against her on the issue of whether she can recover damages under a bystander theory for witnessing the assault and battery on her husband. Three factors guide a determination of whether a plaintiff has a cause of action for emotional harm arising out of the injuries sustained by another:

(1) whether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;

(2) whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and

(3) whether the plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Freeman v. City of Pasadena,* 744 S.W.2d 923, 923–24 (Tex.1988).[1] There is no general duty not to negligently inflict emotional distress. *Boyles v. Kerr,* 855 S.W.2d 593, 594 (Tex.1993). But bystanders who satisfy the three foreseeability factors adopted in *Freeman* may still recover damages for emotional distress suffered as a result of witnessing a sudden triggering event that causes serious or fatal injuries to a third person. *Id.* at 597–98; *Cavanaugh v. Jones,* 863 S.W.2d 551, 557 (Tex.App.—Austin 1993, writ denied); *Robinson v. Chiarello,* 806 S.W.2d 304, 310 (Tex.App.—Fort Worth 1991, writ denied). Each case must be evaluated on its own merits. *Freeman,* 744 S.W.2d at 924.

■ In the typical bystander case, the bystander suffers direct emotional impact because of his contemporaneous sensory observance of the tortfeasor inflicting serious, disabling, or fatal injuries on the primary victim or, in some cases, his sensory observance of the resulting injuries immediately after the occurrence. *See, e.g., Freeman,* 744 S.W.2d at 923 (stepchildren involved in fatal car accident); *Bedgood v. Madalin,* 589 S.W.2d 797 (Tex.Civ.App.—Corpus Christi 1979) (child struck and killed by car), *aff'd in part and rev'd in part,* 600 S.W.2d 773 (Tex. 1980); *Landreth v. Reed,* 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ) (child drowned in swimming pool). The facts in the present case establish that Katherine Washington was in her husband's hospital room when he signed the consent form and when he was placed on a stretcher and taken away for the additional surgery.[2] She remained at the hospital during the surgery but did not witness the surgery, although she knew that an operation was being performed on her husband. Actual observance of the operation is not required if there is otherwise an experiential perception of it. *See Landreth,* 570 S.W.2d at 490. Washington, however, sat in a waiting room. She no doubt felt genuine anxiety and a number of other emotions during the time her husband was in surgery, but she did not "perceive" the event in terms of any of her five senses. Katherine Washington was not a contemporaneous observer of the operation on her husband.

Even if Washington's contemporaneous emotional perception of the event could be deemed to satisfy this element of the *Freeman* standard, Katherine Washington at most witnessed a technical tort, the operation on her husband without the necessary consent, but was not a witness to a sudden traumatic event causing her husband serious injury or death. The operation was not the sudden type of occurrence that the bystander rule contemplates, and the uncontradicted evidence establishes that the acts or omissions of Knight, Griffin, Young, or McDonald did not proximately cause Roy Washington serious or fatal injury.

Washington's distress over the treatment of her husband and grief at being told of his death is understandable, but she is not a bystander as that term is understood in Texas. The manner in which she was treated by the defendants is more aligned with the now disapproved cause of action for negligent infliction of emotional distress than with the fact situation for which the still viable bystander theory of recovery is designed to compensate. *See Boyles,* 855 S.W.2d at 594, 597.

As a matter of law, Washington cannot recover as a bystander for the assault and battery on her husband and conspiracy to commit assault and battery.[3] The trial court

---

1. All of the parties utilize the three-factor test set out in *Freeman,* which appears to be a standard grounded in negligence and based on a bystander who witnesses a sudden traumatic event caused by a negligent tortfeasor, not an intentional tortfeasor. *See Landreth v. Reed,* 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ).

2. She also saw Young "rip" the I.V. out of her husband's arm, but no serious or fatal injury to Roy Washington as a result of this conduct is alleged. Furthermore, Washington's fifth amended petition does not charge Young with assault and battery; Young is named only as a participant or assistant to the assault and battery allegedly committed by Knight.

3. Similarly, Washington contends that the trial court erred in granting summary judgment to Wadley on the issue of whether nurses Young and McDonald were negligent or grossly negligent for not informing Knight, assuming they did fail to inform him, that Roy Washington was not of sound mind on July 8, 1992, and that Katherine Washington refused to sign the operating permit and strongly opposed the surgery on her husband.

did not err in granting summary judgment against her on her bystander claims.

*Intentional Infliction of Emotional Distress*

■ Washington contends that the trial court erred in rendering summary judgment in favor of Knight, Collom & Carney, and Wadley on the issue of whether Knight, Griffin, and Young[4] intentionally inflicted emotional distress on her on July 8, 1992, that proximately caused severe emotional damage to her. The elements of an action for intentional infliction of emotional distress are:

(1) the defendant acted intentionally or recklessly,

(2) the conduct was extreme and outrageous,

(3) the actions of the defendant caused the plaintiff emotional distress, and

(4) the emotional distress suffered by the plaintiff was severe.

*Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993); *see also* RESTATEMENT (SECOND) OF TORTS § 46 (1965).

■ A person acts with intent if he desires to cause the consequences of his act or believes that the consequences are substantially certain to result from it. *See Twyman,* 855 S.W.2d at 630 (Hecht, J., dissenting) (citing *Reed Tool Co. v. Copelin,* 689 S.W.2d 404 (Tex.1985)); *Motsenbocker v. Potts,* 863 S.W.2d 126, 135 (Tex.App.—Dallas 1993, no writ). An actor is reckless when he knows or has reason to know of facts which create a high degree of risk of harm to another and deliberately proceeds to act in conscious disregard of, or indifference to, that risk. *Twyman,* 855 S.W.2d at 624.

■ The conduct must be so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994); *Twyman,* 855 S.W.2d at 621. It is not enough that the defendant has acted with an intent that is tortious or even criminal. *See Reeves v. Western Co. of N. Am.,* 867 S.W.2d 385, 392 (Tex.App.—San Antonio 1993, no writ) (citing to RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Whether the conduct may reasonably be regarded as extreme and outrageous so as to permit recovery is initially a question of law for the courts. *Tarleton State Univ. v. Rosiere,* 867 S.W.2d 948, 952 (Tex.App.—Eastland 1993, writ dism'd by agr.); *Motsenbocker,* 863 S.W.2d at 132.

■ The extreme and outrageous conduct must cause the plaintiff severe emotional distress. Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, disappointment, anger, worry, and despair. *Campos v. Ysleta Gen. Hosp., Inc.,* 836 S.W.2d 791, 795 (Tex.App.—El Paso 1992, writ denied); *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (1965). To be recoverable, the distress must be so severe that no reasonable person could be expected to endure it. *Motsenbocker,* 863 S.W.2d at 132.

■ Whether Knight knew or should have known of Roy Washington's confusion and incapacity to consent to the surgery is disputed, and Knight knew of plans to move his patient to Dallas. But Knight denies knowing of Katherine Washington's strong opposition to the surgery on July 8, 1992, and there is nothing to controvert this in the summary judgment record. Knight had no

---

There is conflicting evidence on whether Young's or McDonald's conduct comported with the appropriate standard of care on the issue of obtaining patient consent and whether the disregard, if any, of the appropriate standard was done with conscious indifference. Washington, however, again sought damages for her mental anguish—apparently under a bystander theory of recovery. For the same reasons set out in the preceding discussion of Washington's status as a bystander, the trial court did not err in rendering summary judgment against Washington on her negligence and gross negligence claims.

4. Washington also names Julia McDonald as a person who intentionally inflicted such distress upon her. McDonald's objectionable conduct involves witnessing Roy Washington's signature on the consent form. As a matter of law, this conduct is not the sort of extreme and outrageous conduct that forms the basis of a cause of action for intentional infliction of emotional distress. Apparently, Washington recognizes this to be the case because, although her point of error names both nurses as having intentionally inflicted emotional distress, her argument and conclusion to this point of error speak only of Young's conduct.

contact with Katherine Washington on July 6 or 7, or on July 8 until after he operated on her husband. Knight's contact with Katherine Washington on July 8 consisted of his coming to the private waiting room to tell Washington that her husband was not expected to live and later returning to the waiting room to tell her of her husband's death. The grief and distress this information caused her was the result of the message and not the misconduct of the messenger. There is no evidence creating a fact issue of whether Knight intentionally or recklessly engaged in extreme and outrageous conduct. The trial court did not err in granting summary judgment to Knight on the intentional infliction of emotional distress cause of action.

However, the evidence reviewed earlier does create fact issues concerning the conduct of Griffin and Young. Katherine Washington characterized their treatment of her as "brutal." John Griffith, a practicing psychiatrist, opined that, because of the acts of the doctors and nurses, Katherine Washington suffered severe distress. He also said that such distress was reasonable under the circumstances. Young's conduct could reasonably be considered intentional or reckless, extreme and outrageous, and the cause of severe emotional distress to Katherine Washington. The trial court erred in rendering summary judgment in favor of Wadley on Washington's claim for intentional infliction of emotional distress.

Griffin also had personal contact with Katherine Washington on the day of the operation. According to Katherine Washington, Griffin ordered her to sign the consent form and told her that if she did not sign, he would see to it that Medicare insurance would not pay her husband's hospital bills, which exceeded $100,000.00. Washington states that this conduct made her even more sad and caused her to cry. Griffin's conduct could reasonably be considered intentional or reckless, extreme and outrageous, and a cause of Katherine Washington's severe emotional distress. The trial court erred in granting summary judgment to Collom & Carney and against Washington on her assertion that Griffin intentionally inflicted emotional distress upon her.

We affirm the summary judgment rendered in favor of Knight in all respects, and in favor of Collom & Carney and Wadley insofar as it denies Washington recovery as a bystander. Otherwise, we reverse the judgment and remand the cause for trial.