Shirley **MARKS–BROWN,** individually and as Executrix of the Estate of Lucilla Lawson–Marks, deceased, Appellants,

v.

Elizabeth W. **ROGG,** M.D.; Patrick W. Wills, M.D.; and Timothy D. Anderson, M.D., Appellees.

No. 14–94–00597–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 1996.

Rehearing Overruled Sept. 19, 1996.

John H. Holloway, Houston, for appellants.

Gregg S. Weinberg, M. Karinne McCullough, Thomas L. Cougill, and John R Shepperd, Houston, for appellees.

Before YATES, FOWLER, and O'NEILL, JJ.

## OPINION

FOWLER, Justice.

### I.

Shirley Marks–Brown, individually and as executrix of the estate of her mother, Lucilla Lawson–Marks, sued Dr. Elizabeth W. Rogg, Dr. Patrick W. Wills, and Dr. Timothy D. Anderson for medical malpractice. Following a jury trial, the trial court entered judgment in favor of the doctors, appellees. Marks–Brown, appellant, brings this appeal. We affirm.

On July 16, 1986, Dr. Wills, a general internist, examined Lucilla Lawson–Marks for swelling under her neck. He prescribed an antibiotic believing Lawson–Marks was suffering from a possible infection related to recent dental surgery. Lawson–Marks also complained of chest pain and her EKG showed occasional skipped heart beats. Dr. Wills performed some tests and ultimately referred Lawson–Marks to Dr. Anderson, a cardiovascular specialist.

Dr. Anderson saw Lawson–Marks on July 22, 1986. He found her coronary arteries normal, but found a mild abnormality of one area of her heart muscle. Dr. Anderson considered this a very minor problem that did not require any treatment. He discharged Lawson–Marks back to Dr. Wills.

Dr. Wills also referred Lawson–Marks to an oral surgeon and to an ear, nose, and throat specialist, Dr. Mabrie, for assessment of the swelling under her neck. Dr. Wills made the referral because a swollen lymph gland suggests the possibility of cancer. Lawson–Marks saw Dr. Mabrie in September of 1986. He performed a biopsy and diagnosed "large cell follicular lymphoma," a highly aggressive and virulent form of cancer. At that point, Dr. Wills called in Dr. Rogg, a cardiologist and oncologist. Dr. Rogg "staged" the cancer and became Lawson–Marks' primary treating physician.

Dr. Rogg reviewed Lawson–Marks' medical records and recommended "CHOP," a chemotherapy treatment generally used to treat large cell follicular lymphoma. This treatment, when used in high doses, can cause heart problems, even irreversible congestive heart failure, so Dr. Anderson was called back into the case to assess Lawson–Marks' cardiac status relative to the cancer and the anticipated treatment. He agreed with Rogg's recommended course of treatment and recommended a "MUGA scan" to measure the systolic properties of the heart's squeezing function. Dr. Anderson reasoned that if the CHOP chemotherapy reached the high level doses associated with heart problems, a second scan could be taken and compared to the original to determine whether the treatment was having an adverse effect on the heart such that the treatment should be modified or discontinued.

The scan showed only a slight abnormality and Dr. Anderson informed Dr. Rogg there was no reason to change the decision to use CHOP chemotherapy. According to Dr. Rogg, she discussed the risks and benefits of the planned treatment with Lawson–Marks, and specifically, the fact that one of the drugs used in CHOP therapy, adriamycin, could cause toxicity leading to heart damage. This is disputed by appellant.

Lawson–Marks began the treatment and Dr. Rogg monitored her progress. On February 16, 1987, Lawson–Marks experienced shortness of breath in Dr. Rogg's office. Dr. Wills was informed and he admitted her to St. Josephs Hospital. According to Dr. Wills, Lawson–Marks responded to therapy and medication and she was discharged on February 22, 1987, with a diagnosis of congestive heart failure.

Lawson–Marks was hospitalized several times in the Spring of 1987, but her condition

deteriorated. She died on June 7, 1987, from cardiac arrest due to congestive heart failure. At the time of her death, she was cancer free. An autopsy was conducted and the autopsy report included a finding of cardiomyopathy and suggested the presence of heart damage from adriamycin toxicity; however, there was testimony about other possible causes of cardiomyopathy and testimony that certain non-specific findings in the autopsy report suggested other causes for Lawson–Marks' heart failure.

Appellant, the daughter of Lawson–Marks, filed suit against Dr. Rogg, Dr. Wills, and Dr. Anderson alleging negligence and failure to obtain informed consent.[1] The case was tried before a jury which found in favor of the doctors on all issues. The trial court entered a take nothing judgment in favor of the doctors. Appellant brought this appeal complaining in twenty-seven points of error about the judgment.

In points twenty-six through twenty-nine, appellant complains the trial court should have submitted her requested issues on intentional and negligent misrepresentation. She argues that question four, the question on lack of informed consent, was inadequate to submit all the issues pled and proved in the case. She claims the issues should have been submitted because intentional and negligent misrepresentation are claims that are separate and distinct from the claim of lack of informed consent. Under the facts of this case, we disagree.

Article 4590i, section 6.02 states as follows:

In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

Tex.Rev.Civ. Stat. Ann. art. 4590i § 6.02 (Vernon Pamph.1996) (emphasis added).

All of the issues requested by appellant and refused by the trial court had to do with the doctors' alleged failure to disclose the risks or hazards involved in the medical care and procedures rendered to Lawson–Marks.[3] Article 4509i, section 6.02 clearly provides that in such an instance, the only theory available to a plaintiff is one for negligence in failing to obtain informed consent. A plaintiff is not allowed to submit alternate theories of misrepresentation or fraud under such circumstances. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 6.02. We acknowledge that it is unclear whether a plaintiff's claims are limited by section 6.02 if they involve alleged negligent or fraudulent misrepresentations that do not specifically relate to the doctor's failure to inform the patient about the risks and hazards of the medical treatment. *See Melissinos v. Phamanivong*, 823 S.W.2d 339, 344 (Tex.App.—Texarkana 1991, writ denied) (holding that court did not err in submitting both informed consent and fraud causes of action when representation was that toe would "be normal"). However, in the case before us, it is unnecessary for this court to decide that issue because appellant's requested issues clearly related to the risks and hazards of the medical treatment. Therefore, the trial court properly refused appellant's requested issues, and we overrule points of error twenty-six through twenty-nine.

---

1. According to the Fourth Amended Petition, Marks–Brown also sued Diagnostic Center Hospital and Diagnostic Clinic of Houston, P.A.; however, the jury charge referred only to the individual doctors.

3. For example, requested question thirty-six asked whether Dr. Rogg made a material misrepresentation as to the nature of the cancer, the risks or hazards of the CHOP therapy based upon the patient's prior heart condition and medical history, or alternatives to the proposed medical treatment.

## IX.

Having overruled all of appellant's points of error, we affirm the judgment of the trial court.