Mercedes ANDRADE GARCIA, Maria Teresa Galvan De Garcia, The Estate of Juan Antonio Garcia, Blanca Garcia Rojas Gregoriedes, Teresa Elizabeth Garcia Rojas, Maria Guadalupe Garcia Valdes, Yolanda Valdes Esquivel, As Next Friend of Juan Antonio Garcia Valdes, a Minor, Plaintiffs,

v.

COLUMBIA MEDICAL CENTER OF SHERMAN, and Bradley G. Christianson, D.O., Defendants.

No. 3:97–CV–18.

United States District Court,
E.D. Texas,
Paris Division.

March 2, 1998.

L. Glen Kratochvil, Ernest M. Powell, III, Kratochvil & Powell, Houston, TX, for Blanca Garcia Rojas Gregoriedes, Teresa Elizabeth Garcia Rojas.

Randy Lynn Fairless, Johanson & Fairless, Houston, TX, for Maria Guadalupe Garcia Valdes, Yolanda Valdes Esquivel.

Cynthia Shea Goosen, David Wayne Moorman, Cooper Aldous & Scully, Sherman, TX, for Bradley G. Christianson.

Lea F. Courington, Gwinn & Roby, Dallas, TX, Kenneth Charles Stone, Gwinn & Roby, Dallas, TX, Max Edward Freeman, II, Gwinn & Roby, Dallas, TX, Benton Jordan Barton, Gwinn & Roby, Dallas, TX, Elizabeth D. Alvarado, Candice Eileen Sayre, Shannon Martin Finkelstein & Sayre, Houston, TX, for Medical Plaza Hospital Inc., dba Columbia Medical Plaza Hospital, Bradley G. Christianson.

## *ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT*

SCHELL, District Judge.

This matter is before the court on Plaintiffs' Motion for Leave to File An Amended Complaint, filed on January 9, 1998. Defendant Columbia Medical Center of Sherman ("Columbia") submitted a response on January 20, 1998, and a supplement thereto on January 27, 1998.[1] Plaintiffs filed a reply on January 28, 1998. Upon consideration of the motion, response, supplemental response, reply, and applicable law, the court is of the opinion that Plaintiffs' motion should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

Plaintiffs filed this medical liability cause of action on March 17, 1997, pursuant to Article 4590i of the Texas Medical Liability and Insurance Improvement Act, Texas Re-

Donald H. Flanary, Jr., Jenna B. Yake, Michael V. Winchester, Vial Hamilton Koch & Knox, Dallas, TX, for Mercedes Andrade Garcia, Maria Teresa Galvan de Garcia, Juan Antonio Garcia Valdes.

**1.** The file stamp on Plaintiffs' motion indicates that the motion was not filed until January 12, 1998. However, at the February 2, 1998, final pretrial hearing and jury scheduling conference in this case, counsel for all parties agreed in open court and on the record that this motion was served upon defendants and mailed for filing on January 9, 1998. Columbia submitted their response to Plaintiffs' motion for filing on January 20, 1998. This response was not file stamped until February 3, 1998, however, because it was not actually deemed filed until the court granted Columbia's Motion to File Brief in Excess of Fifteen Pages.

vised Civil Statutes (hereinafter "Article 4590i"). Tex.Rev.Civ.Stat. art. 4590i (Vernon 1998). In their Original Complaint, Plaintiffs allege that Juan Antonio Garcia ("Garcia") was wrongfully intubated after his prostate surgery on July 11, 1995. This wrongful intubation occurred when an endotracheal tube was placed in Garcia's esophagus rather than his trachea. According to Plaintiffs, this wrongful intubation caused Garcia to suffocate, suffer cardiac arrest, and ultimately die.

Upon the advice of Defendants, Garcia was placed on life support for three days. After three days had elapsed, Columbia informed Plaintiffs that an electroencephalogram ("EEG") should be conducted to determine if Garcia was brain dead. The EEG was then performed and revealed that Garcia was in fact brain dead. Shortly thereafter, Garcia was taken off of life support and passed away. Plaintiffs allege in their Original Complaint that Defendants' negligence and gross negligence were the proximate cause of Garcia's death.

Upon the close of discovery, Plaintiffs filed the present motion. Plaintiffs allege that the discovery process revealed additional tortious conduct on the part of Defendants not pleaded in the Original Complaint. At the heart of these allegations lies Plaintiffs' claim that Columbia conducted a clandestine EEG on Garcia on July 11, 1995, shortly after he was wrongfully intubated. This EEG revealed that Garcia was brain dead. Plaintiffs allege that Columbia neither informed them that this test was taken nor disclosed its results. Instead, Plaintiffs continue, Columbia went to great lengths to cover up the results of this test and acted as if the extent of Garcia's condition was unknown until after the results of the EEG taken three days later were reported. Plaintiffs also claim that Columbia either altered or destroyed other evidence regarding the nature and cause of Garcia's death. Accordingly, Plaintiffs now move to amend their complaint to add to their negligence and gross negligence claims, and to add causes of action for negligence per se, fraud, intentional infliction of emotional distress, intentional tort, assault and battery, civil conspiracy, bystander recovery, spoliation, and punitive damages.

## II. ANALYSIS

Where responsive pleadings have already been filed, a party "may amend [a] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision whether justice requires amendment is committed to the discretion of the district judge, and is reversible only for an abuse of discretion. *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117, 121 (5th Cir.1982) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)); *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1024 (5th Cir.1981); *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981). In determining whether to grant leave to amend, the district court "may consider such factors as prejudice to the opposing party, undue delay, repeated failure to cure deficiencies with prior amendment, bad faith, dilatory motive and futility of amendment." *Union Planters,* 687 F.2d at 121; *see also Southern Constructors Group v. Dynalectric Co.,* 2 F.3d 606, 611 (5th Cir.1993) (Rule 15 evinces a bias in favor of granting leave to amend). Although courts "should liberally allow amendments, leave to amend is not automatic." *Bloom v. Bexar County,* 130 F.3d 722, 727 (5th Cir.1997). Thus, courts may deny leave to amend where amendment would result in undue prejudice to the opposing party. *In re Norplant Contraceptive Products Liability Litigation,* 163 F.R.D. 258, 259 (E.D.Tex.1995) (citing *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 546 (5th Cir.1983)).

In the present case, Columbia argues that the interests of justice would not be served if Plaintiffs are allowed to amend their complaint. Columbia relies on three factors in support of this argument: undue delay, undue prejudice to Defendants if amendment is allowed, and futility of Plaintiffs' proposed amendments. The court will address each factor in turn.

## A. Undue Delay

The court finds that the factor of undue delay does not counsel against amendment. The docket control order for this case clearly states that the deadline for filing motions for leave to amend was January 9, 1998. Docket Control Order of August 22, 1998, at 1 ("Docket Control Order"). While Plaintiffs' motion was file stamped on January 12, 1998, Defendants have represented to the court that they were served with a copy of Plaintiffs' motion on January 9, 1998. *See supra* note 1. In fact, Columbia does not argue that Plaintiffs' motion was not timely. Instead, Columbia argues only that Plaintiffs should not have waited until the last day allowed under the Docket Control Order for seeking leave to amend. The court does not agree.

█ The Docket Control Order contemplates that parties may wish to amend their pleadings based upon information revealed during the course of discovery. Consequently, the last day for filing motions for leave to amend and the day on which discovery closed in this case was the same—January 9, 1998. Because Plaintiffs served Defendants with a copy of Plaintiffs' motion on that date, the court finds that the motion was not the result of undue delay.

## B. Undue Prejudice

█ The court also finds that allowing amendment in this instance would not result in undue prejudice to Defendants. The trial of this case is not set to begin until March 16, 1998. Thus, the parties will have more than two weeks from the date of this order to take any additional preparatory measures made necessary by Plaintiffs' Amended Complaint. If the amendment of Plaintiffs' complaint results in the need for additional discovery in this case, Defendants may file a motion requesting leave to undertake such discovery if needed. Further, Plaintiffs have represented to the court that they will "cooperate with [Columbia] in expediting any good faith discovery requests it may have." Pls.' Reply at 8. Accordingly, the court does not find that the amendment of Plaintiffs' complaint will result in undue prejudice to Defendants.

## C. Futility of Amendment

In their Original Complaint, Plaintiffs allege negligence and gross negligence. In their proposed Amended Complaint, Plaintiffs seek to add to their negligence and gross negligence claims. Plaintiffs also seek to add the following theories of recovery: negligence per se, fraud, intentional infliction of emotional distress, intentional tort, assault and battery, civil conspiracy, bystander recovery, and spoliation of evidence. Finally, Plaintiffs assert that they are entitled to punitive damages.

Columbia contends that Plaintiffs should not be allowed to amend their complaint because the proposed amendments would be futile under Texas law. Columbia argues that Plaintiffs have simply attempted to recast a health care liability claim into a claim based on numerous theories of recovery subsumed by Article 4590i. Columbia also maintains that Plaintiffs' newly asserted claims could not withstand a motion to dismiss. Therefore, Columbia continues, Plaintiffs' proposed amendments would be futile and should not be allowed.

To determine whether the addition of Plaintiffs' newly alleged claims would indeed be futile under Texas law, the court must first briefly discuss the scope of Article 4590i. Next, the court must analyze each of Plaintiffs' proposed amendments. If an amendment relates to a cause of action subsumed by Article 4590i, then the addition of such a claim should not be allowed. On the other hand, if a claim is not subsumed by Article 4590i, would otherwise be viable under Texas law, and has not been previously presented through some other theory of recovery, then the addition of that claim should be allowed.

### 1. The scope of Article 4590i

The Texas legislature passed Article 4590i for the purpose of making health care more affordable by reducing the cost of health care liability claims and the price of medical malpractice insurance. *See* TEX.REV.CIV.STAT. art 4590i, § 1.02 (Vernon 1998). The State chose to achieve these goals by imposing a cap on the amount of damages which a claimant in a health care liability action could recover. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846

(Tex.1990). The statute and its damages cap apply to "health care liability claims." TEX. REV.CIV.STAT. art 4590i (Vernon 1998). Thus, whether Article 4590i governs a claim depends on whether that claim can be classified as a health care liability claim.

The statute defines a health care liability claim as claim "against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim ... sounds in tort or contract." *Id.* § 1.03(4). The statute further defines "health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 1.03(2). The term "medical care" is defined as "any act defined as practicing medicine in Article 4510 ... performed or furnished, or which should have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's care, treatment, or confinement." *Id.* § 1.03(6).

■ Therefore, a claim against a physician or health care provider for treatment which was or should have been given to a patient must be asserted under Article 4590i. Such claims are synonymous with negligence or gross negligence claims because the claimant must prove that the defendant's conduct constituted a departure from the accepted standard of care and proximately caused the patient's injury. If a claim is in fact a health care liability claim governed by Article 4590i, then it may be subject to Article 4590i's cap on civil liability damages. However, if the claim is not governed by Article 4590i, the statutory limitation on damages will not apply.

### 2. *Plaintiffs' claims*

#### a. Negligence

In both their original and amended complaints, Plaintiffs have asserted a negligence action for the wrongful death of Garcia, the deceased. Plaintiffs have also pleaded the doctrine of *res ipsa loquitur.* The difference between Plaintiffs' allegations of negligence in their original and amended complaints can be found in their specific allegations of conduct which constitutes negligence. The Original Complaint alleges 13 acts or omissions which constitute negligence, while the Amended Complaint alleges 59 such acts or omissions.

■ Columbia complains of the fact that the Amended Complaint alleges 46 additional negligent acts or omissions on the part of Defendants not previously asserted in the Original Complaint. Each alleged act or omission is related to health and medical care which Mr. Garcia did or did not receive. While these allegations are related to a health care liability claim and are governed by Article 4590i, their addition to Plaintiffs' complaint would not result in a new theory of recovery against the defendants. Accordingly, the court finds that the addition of these acts or omissions to the Plaintiffs' negligence claim should be allowed.

#### b. Gross negligence

Plaintiffs pleaded gross negligence in their Original Complaint. In their Amended Complaint, Plaintiffs assert 19 specific acts or omissions which they allege constitute gross negligence. This section of the Amended Complaint does not seek to add any new or additional theories of recovery. Neither did Defendants address this theory of recovery in their opposition to Plaintiffs' Motion for Leave to Amend. Therefore, just as with Plaintiffs' negligence claim, the court finds that the addition of these allegations to Plaintiffs' gross negligence claim should be allowed

#### c. Negligence per se

Plaintiffs did not plead negligence per se in their Original Complaint. In their Amended Complaint, Plaintiffs allege that Columbia was negligent per se because it violated three statutory provisions of Texas law. Specifically, Plaintiffs allege that Columbia violated the following statutory provisions:

1. Article 49.25 of the Texas Code of Criminal Procedure: The Plaintiffs claim that Columbia violated this statute when it failed to notify the Justice of the Peace of Garcia's death within the 24 hour time period required under the statute.

2. Section 193 of the Texas Health and Safety Code: The Plaintiffs allege that Columbia violated this statute when it allowed a physician other than the physician attending Garcia at the time of his death to sign his death certificate.

3. Sections 671 and 672 of the Health and Safety Code: The Plaintiffs allege that Columbia violated these statutory provisions by terminating life support prior to an official pronouncement that Garcia was brain dead.

Columbia argues that negligence per se is not available as a theory of recovery because no court has adopted the statutory provisions relied upon by Plaintiffs as a standard for negligence.

Negligence per se occurs where there is an unexcused violation of a statute designed to protect the class of persons of which the injured party is a member. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 312 (Tex.1987). "[C]ourts will not adopt a statute as a standard for negligence unless one of the purposes of the statute is to protect the class of persons to which the injured party belongs from the hazard involved in the particular case." *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979). If a court does not believe that the statute defines the conduct of a reasonably prudent person, the court is not obligated to adopt the statute as a standard for civil liability. *Id.* at 279. Further, even if the court chooses to adopt the statute as the applicable standard of care, the plaintiff must still establish that a violation of the statute proximately caused the complained of harm. *See Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985).

In the present case, the court declines to adopt the first two statutes upon which Plaintiffs base their negligence per se claim, Section 193 of the Texas Health and Safety Code and Article 49.25 of the Texas Code of Criminal Procedure, as defining reasonable standards of care. Each statute deals with conduct related to the reporting or pronouncement of a person's death. These statutes do not identify the class of persons which they seek to protect or the hazards which they seek to prevent. It is hard to imagine how a person could be protected by a statute that deals with the post mortem reporting of his death. Thus, it would be very difficult for this or any other court to determine whether Garcia fits within the class of persons protected under the statute.

Whether to adopt the third statute which Plaintiffs rely upon as a standard for reasonable care is a different question. Plaintiffs claim that Columbia was negligent per se because it did not comply with the requirements of Sections 671 and 672 of the Texas Health and Safety Code. Section 671.001(c) states that "[d]eath must be pronounced before artificial means of supporting a person's respiratory and circulatory functions are terminated." TEX. HEALTH & SAFETY CODE ANN. § 671.001(c) (Vernon 1992). Section 672.009 describes the procedures that must be followed prior to making the decision to withdraw life-sustaining procedures from a patient. *Id.* § 672.009. Plaintiffs argue that Columbia failed to comply with each statutory provision.

At first glance, the statute seems to be designed to protect any doctors or hospital staff members who act in compliance with the statute. For example, section 671.002 limits the liability of a person who makes a determination of death or withdraws life support in accordance with the provisions of the statute. *Id.* § 671.002. This limitation on liability, however, goes to show that at least one purpose of the statute is to prevent life-sustaining procedures from being stopped prior to an official pronouncement of death and the consent of the proper parties. Therefore, the statute appears to create a standard of care, the breach of which results in the loss of the protection afforded by the statute's limitation of liability provisions.

If Columbia did in fact fail to comply with these statutory requirements, and Garcia was taken off of life support prior to the pronouncement of his death and the proper

consent from his family, then Columbia may have violated the Health and Safety Code. A reasonable fact finder could find that such a violation, if any, proximately caused not only Garcia's death prematurely, but also his family's mental anguish. Therefore, the court is of the opinion that the statutory provisions of sections 671.001(c) and 672.009 of the Texas Health and Safety Code should be adopted as a standard for negligence in this case. Accordingly, the court finds that the addition of this specific part of Plaintiffs' negligence per se claim should be allowed.

### d. Fraud

■ Plaintiffs did not plead fraud in their Original Complaint. In their Amended Complaint, however, Plaintiffs seek to add a claim for common law fraud. This claim centers around two types of fraudulent conduct. The majority of Plaintiffs' fraud claim focuses on alleged prospective misrepresentations or concealment of information regarding the care that Defendants would give Garcia. These allegations very clearly concern treatment that was or should have been given to Garcia and, therefore, fall under the parameters of a health care liability claim governed by Article 4590i. Further, these allegations fall under Article 4590i's informed consent provisions, under which a claim for "failure to disclose the risks or hazards involved in medical care and procedures ... [can only be brought as a claim] for negligence in failing to obtain informed consent." *Marks–Brown v. Rogg*, 928 S.W.2d 304, 306 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (for a full discussion of Article 4590i's informed consent provisions, see the discussion regarding Plaintiffs' assault and battery claim, *infra* II.C.2.g). Thus, this part of Plaintiffs' fraud claim is subsumed by Article 4590i and its addition would be inappropriate.

The remainder of Plaintiffs' fraud allegations concern Columbia's conduct after Garcia was wrongfully intubated. Plaintiffs allege that Columbia performed the July 11, 1995, EEG on Garcia without informing the family. Although the EEG showed that Garcia was brain dead, Plaintiffs contend that Columbia did not inform them about the EEG or its results for three days. Plaintiffs

allege that by this conduct Columbia fraudulently induced them to keep Garcia in the hospital, on life support, for three days after Columbia had already determined that he was brain dead. Plaintiffs also allege that this conduct was the result of Columbia's effort to cover up what it had done to Garcia.

■ This portion of Plaintiffs' fraud claim does not constitute a health care liability claim subsumed by Article 4590i, because it neither relates to an informed consent claim nor concerns a breach of the applicable standard of care. For example, in *Sorokolit v. Rhodes*, the Texas Supreme Court held that a Texas Deceptive Trade Practices Act ("DTPA") claim is allowed against a physician if the claim is not "merely the recharacterization of a negligence suit." 889 S.W.2d 239, 242 (Tex.1994). In *Sorokolit*, the plaintiff alleged that her physician made knowing misrepresentations regarding the results of a proposed breast augmentation surgery. *Id.* at 240. When the surgery did not turn out as the physician had promised, the plaintiff sued under the DTPA. The physician won dismissal of the suit in the trial court on the basis that the claim was precluded by section 12.01(a) of Article 4590i, which does not allow a DTPA action against a physician or health care provider based on negligence. *Id.* The Texas Supreme Court reversed, holding that the claim was not precluded by section 12.01(a) because the claim dealt with the physician's intentional deception, not "a determination of whether a physician failed to meet the standard of medical care." *Id.* at 242.

Just as the plaintiff's DTPA claim in *Sorokolit* was not based on a theory of negligence, Plaintiffs' allegations that Columbia intentionally concealed or misrepresented information regarding the July 11, 1995, EEG and Garcia's death do not require a determination of whether Columbia breached the appropriate standard of medical care. Neither do these allegations deal with failure to obtain informed consent. Instead, Plaintiffs' allegations require a determination of whether the hospital intentionally concealed or misrepresented information regarding the severity of Garcia's condition, thereby inducing Plaintiffs to leave Garcia on life support for

three additional days. These allegations are not based on treatment that was or should have been given to Garcia and, therefore, are not subsumed by Article 4590i. Accordingly, the court finds that Plaintiffs should be allowed to amend their complaint to assert these specific allegations of fraud.[2]

### e. Intentional infliction of emotional distress

Plaintiffs did not plead intentional infliction of emotional distress ("IIED") in their Original Complaint. Like their fraud claim, Plaintiffs' IIED claim can be broken down into two parts. The majority of Plaintiffs' IIED claim focuses on the treatment which they allege Defendants gave or should have given Garcia. This part of Plaintiffs' IIED claim constitutes a health care liability claim subsumed by Article 4590i, which Plaintiffs have attempted to recast as an intentional tort. The addition of this part of Plaintiffs' IIED claim would be futile.

The remainder of Plaintiffs' IIED claim does not relate to Defendants' treatment of Garcia. Instead, the claim concerns Columbia's conduct after Garcia's injury. Specifically, Plaintiffs allege that Columbia destroyed records, including heart monitor strips and the documentation of drugs and medication administered to Garcia during the time before and after his injury. Plaintiffs also allege that Columbia's conduct in taking the July 11, 1995, EEG and concealing its results, constitutes IIED. Plaintiffs claim that Columbia led them to believe that Garcia might not be brain dead and should be kept on life support when, in fact, the EEG taken three days earlier had confirmed that Garcia was brain dead.

The elements of a cause of action for IIED in Texas are: (1) the defendant acted recklessly or intentionally; (2) the de-

fendant's conduct was extreme or outrageous; (3) the defendant's conduct caused emotional distress; and (4) the plaintiff's emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). The above allegations regarding Columbia's conduct after Garcia's injury clearly suffice to state a cause of action for IIED. Accordingly, the court finds that the addition of Plaintiffs' IIED claim, as it relates to this specific conduct, should be allowed.

### f. Intentional tort

Plaintiffs did not plead intentional tort in their Original Complaint. The court was not able to find a single Texas case recognizing a separate cause of action for "intentional tort." Further, even if such a cause of action does exist under Texas law, the conduct which Plaintiffs claim gives rise to this cause of action relates to the treatment which they claim Garcia was or should have been given. Thus, this cause of action is really an attempt to recast a health care liability claim under Article 4590i as an intentional tort. Accordingly, the addition of this claim would be futile.

### g. Assault and battery

Plaintiffs did not plead assault and battery in their Original Complaint. In their Amended Complaint, Plaintiffs allege that Columbia committed assault and battery on Garcia from 1:00 p.m. on July 11, 1995 (the time immediately after he was wrongfully intubated), until his death. Apparently, this allegation is in reference to the July 11, 1995, EEG taken by Columbia, and Columbia's efforts to keep Garcia on life support even after it knew he was brain dead.

Prior to the enactment of Article 4590i, Texas law recognized a common law cause of action for assault and battery in

---

**2.** The specific allegations which Plaintiffs will be allowed to add appear on pages 14–15 of their Amended Complaint and are as follows:

> Further, the hospital intended to induce Mr. Garcia and his family to take certain actions, that is, keep Mr. Garcia in the hospital three additional days by concealing or failing to disclose material facts that dealt with the catastrophic brain damage done to him at the hands of Osteopath Christianson at the hospi-

tal ... As a consequence and as a proximate cause of the reliance of these misrepresentations, Mr. Garcia was killed and his family was injured. As if that were not enough, the hospital then engaged in additional acts of intentional fraud to cover up and hide what it had done.

Amended Complaint at 14–15. The above excerpt represents the entirety of the allegations of fraud which the court will allow Plaintiffs' to add to their complaint.

medical liability cases for "injuries which result from an unpermitted touching." *Greene v. Thiet*, 846 S.W.2d 26, 35 (Tex.App.—San Antonio 1992, writ denied). Thus, a plaintiff could recover on a theory of assault and battery by proving that his physician failed to disclose a risk involved or a procedure which might be conducted. *Id.* In light of the enactment of Article 4590i, however, such informed consent cases "are no longer to be decided in terms of assault and battery. Rather, the law is that these cases are to be based upon a negligence theory of recovery." *Id.* at 36 (citing *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex.1989)). Accordingly, an assault and battery claim like that asserted by Plaintiffs is governed not by the common law, but by Article 4590i.

To the extent that Plaintiffs' assault and battery claim relates to the treatment that was or should have been given to Mr. Garcia, the claim is merely a health care liability claim recast as an intentional tort. Thus, the claim is subsumed by Article 4590i and covered by Plaintiffs' negligence and gross negligence claims. This claim is also subsumed by Article 4590i to the extent that the claim relates to Plaintiffs' allegations that neither they nor Garcia consented to the July 11, 1995, EEG taken by Columbia.

Article 4590i limits a claim based upon a physician's or health care provider's failure to disclose or adequately disclose the risks and hazards associated with a medical procedure to a claim that the physician or health care provider was negligent in failing to disclose those risks or hazards Tex.Rev.Civ. Stat. art 4590i, § 6 .02 (Vernon 1998). Article 4590i outlines the risks and hazards which must be disclosed and consented to by the patient or someone authorized to give consent on his behalf. If a patient or person authorized to consent for the patient gives consent to the procedure after such disclosure, there is a presumption that the statutory disclosure requirements were satisfied and, therefore, that the physician or health care provider acted reasonably. *Id.* § 6.07. Further, if a person is not able to communicate because of an injury, or is unconscious, and is suffering from a life-threatening injury or illness, emergency care may be given

without such consent. Tex. Health & Safety Code Ann. § 773.008 (Vernon 1992).

In the present case, it is clear that Garcia was fully informed of the risks and hazards associated with his prostate surgery and of the use of anesthesia during and after his surgery. Def.'s Opp. to Pls.' Mot. for Leave to File Amended Compl., Ex. A ("Disclosure and Consent Medical and Surgical Procedures"). In fact, Garcia signed a form consenting to the use of anesthesia and stating that he was aware that its use could result in "paralysis, brain damage or even death." *Id.* This consent form also authorized his "physician, and such associated technical assistants and other health care providers to perform such other procedures which are advisable in their professional judgment." *Id.* Thus, any assault and battery claim based upon the allegation that Garcia did not give informed consent would be futile in light of the disclosure and consent form which he signed and the informed consent provisions of Article 4590i.

### h. Civil conspiracy

Plaintiffs did not allege civil conspiracy in their Original Complaint. Plaintiffs' civil conspiracy claims relate to the July 11, 1995, EEG conducted by Columbia and Columbia's alleged failure to inform the Garcia family about this test and its results, actions in keeping Garcia on life support after the EEG demonstrated that he was brain dead, termination of life support prior to a pronouncement of death, and the falsification of medical records. Columbia claims that the addition of a claim for civil conspiracy should not be allowed because a medical malpractice claim is a negligence cause of action, and there can be no civil conspiracy to commit negligence.

"A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex.1996). This tort requires specific intent. *Id.* To be liable for civil conspiracy, "the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement." *Id.* There-

fore, the "parties cannot engage in a civil conspiracy to be negligent." *Id.*

In the present case, Plaintiffs have alleged a viable cause of action for civil conspiracy. Contrary to Columbia's argument, Plaintiffs' civil conspiracy claim is not based on negligence and is not based on treatment which was or should have been given to Garcia. Thus, this claim is not subsumed by Article 4590i. Instead, Plaintiffs allege that Columbia conducted the EEG to determine the extent of the harm they inflicted on Garcia. When Columbia discovered that Garcia was in fact brain dead, Plaintiffs claim it allegedly hid this fact from them, thus causing them to incur over $40,000 in additional medical expenses. Further, Plaintiffs contend that Columbia took steps to destroy, falsify, or conceal medical records regarding the July 11, 1995, EEG and Garcia's condition. According to Plaintiffs, all of these actions were taken in order to hide the cause and nature of Garcia's injury and ultimate death. These allegations are sufficient to state a claim under the theory of civil conspiracy. Therefore, the court finds that the addition of this claim should be allowed.

### i. Bystander Recovery

Plaintiffs did not assert a bystander recovery claim in their Original Complaint. In their Amended Complaint, Plaintiffs allege that they should be allowed to recover under this theory for Columbia's conduct from the afternoon of July 11, 1995, until Garcia's death. Like their IIED and civil conspiracy claims, it appears that Plaintiffs' bystander recovery claim relates to the July 11, 1995, EEG test taken by Columbia, and Columbia's efforts to keep Garcia on life support after it knew that he was brain dead.

To recover under the theory of bystander recovery, a plaintiff must show that: (1) he was at the scene of the accident; (2) the mental anguish resulted from the sensory and contemporaneous observation of the accident, as opposed to learning about it from others; and (3) the plaintiff and the victim were closely related. *See Washington v. Knight,* 887 S.W.2d 211, 214 (Tex.App.—Texarkana 1994, writ denied) (citing *Freeman v. City of Pasadena,* 744 S.W.2d 923, 923–24

(Tex.1988)). The bystander rule contemplates "contemporaneous sensory observance of the tortfeasor inflicting serious, disabling, or fatal injuries on the primary victim...." *Id.* at 215. For example, in *Knight,* the court did not allow the plaintiff to recover under this theory for injuries inflicted upon her husband while he was in surgery because, although she was in the hospital during the surgery, she "was not a witness to a sudden traumatic event causing her husband serious injury or death." *Id.*

Like the plaintiff in *Knight,* Plaintiffs should not be allowed to recover under this theory. Plaintiffs were not at the hospital at the time Garcia was wrongfully intubated. Further, Plaintiffs did not see Columbia administer the July 11, 1995, EEG to Garcia. Thus, Plaintiffs could not have had a contemporaneous sensory experience of the events giving rise to Garcia's injuries. Accordingly, the court finds that the addition of this claim would be futile.

### j. Spoliation

Plaintiffs did not plead spoliation in their Original Complaint. In their Amended Complaint, Plaintiffs allege that Columbia destroyed heart monitor strips, drug records, and an evaluation of Garcia for the critical periods before and after his injury. Plaintiffs claim that they are entitled to a finding of spoliation with respect to these documents and to a presumption of fault on the part of Columbia with respect to any inference which could be drawn from this evidence. Columbia argues that while Texas law may allow for a jury instruction regarding spoliation of evidence, it does not recognize a separate cause of action for spoliation of evidence.

"Spoliation is defined as: 'the destruction of evidence.... The destruction, or the significant and meaningful alteration of a document or instrument.'" *Brewer v. Dowling,* 862 S.W.2d 156, 158 n. 2 (Tex.App.—Fort Worth 1993, writ denied) (quoting BLACK'S LAW DICTIONARY 1257 (5th ed.1979)). If a party proves that an opponent has intentionally destroyed or altered relevant evidence, then that party is entitled to a presumption that the spoliated evidence would

have been harmful to the spoliator's case. *Id.* at 159. The party is also entitled to a jury instruction regarding this presumption. *Id.*

While Texas courts are in agreement as to the availability of a jury instruction regarding spoliation of evidence, only one Texas court has recognized a cause of action for spoliation of evidence. *See Ortega v. Trevino,* 938 S.W.2d 219, 220–223 (Tex.App.—Corpus Christi 1997, writ granted). In *Ortega,* the court acknowledged that no Texas court had ever recognized such a cause of action. *Id.* at 222. After reviewing the law of seven other states which allow an independent cause of action for spoliation of evidence, however, the court allowed the plaintiff to assert a separate cause of action for spoliation. *Id.* at 223.

The court's decision in *Ortega* was called into question in *Malone v. Foster,* 956 S.W.2d 573, 581 (Tex.App.—Dallas 1997, writ granted). In *Malone,* the court declined to follow *Ortega,* holding that "Texas courts are obligated to follow only higher Texas courts and the United States Supreme Court.... The Texas Supreme Court has never recognized an independent cause of action for intentional spoliation of evidence." *Id.* at 582. Instead of adopting a separate cause of action for spoliation, the court found that Texas law affords sufficient remedies for spoliation of evidence, including sanctions, a jury instruction regarding the presumption against the spoliator, and criminal proceedings for obstruction of justice. *Id.*

■ While the Texas Supreme Court has not yet addressed this issue, it appears that the approach taken by the court in *Malone* is the better course of action in this case. With the lone exception of *Ortega,* no Texas court has recognized an independent cause of action of spoliation of evidence. Instead, when the issue of spoliation arises, courts have relied upon the well-settled remedy of a proper jury instruction regarding the presumption that arises against the spoliator of evidence. Unless and until the Texas Supreme Court holds otherwise, the proper course of action in a case involving spoliation is to allow a jury instruction regarding the spoliated evidence upon proof of intentional

spoliation, not to allow the plaintiff to assert a separate cause of action for spoliation of evidence. Accordingly, the addition of this claim would be futile.

### k. Punitive Damages

Plaintiffs did not plead punitive damages in their Original Complaint; however, they did plead gross negligence. Further, in their Amended Complaint, Plaintiffs allege that they are entitled to punitive damages. If Plaintiffs prevail on their gross negligence claim or any of their newly asserted intentional tort claims, they may be entitled to punitive damages. Therefore, Plaintiffs should be allowed to add their claim for punitive damages.

### III. CONCLUSION

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the court finds that Plaintiffs should be allowed to amend their Original Complaint. However, the court also finds that the addition of certain claims asserted in Plaintiffs' proposed Amended Complaint would be futile. Therefore, Plaintiffs' Motion for Leave to Amend Original Complaint is GRANTED IN PART, insofar as it relates to Plaintiffs' claims for negligence (as amended), gross negligence (as amended), negligence per se (in part), fraud (in part), intentional infliction of emotional distress (in part), civil conspiracy, and punitive damages. Plaintiffs motion is DENIED IN PART insofar as it relates to Plaintiffs' claims for negligence per se (in part), fraud (in part), intentional infliction of emotional distress (in part), intentional tort, bystander recovery, assault and battery, and spoliation. Plaintiffs are hereby ORDERED to submit a revised amended complaint, setting forth the following claims:

(a) Negligence (as amended).

(b) Gross negligence (as amended).

(c) Negligence per se, limited to Plaintiffs' allegations that Columbia violated sections 671 and 672 of the Texas Health and Safety Code. *See supra* pages 610–612.

(d) Fraud, limited to the following allegations of fraudulent conduct:

[T]he hospital intended to induce Mr. Garcia and his family to take certain actions, that is, keep Mr. Garcia in the

hospital three additional days by concealing or failing to disclose material facts that dealt with the catastrophic brain damage done to him at the hands of Osteopath Christianson at the hospital. As a consequence and as a proximate cause of the reliance of these misrepresentations, Mr. Garcia was killed and his family was injured. As if that were not enough, the hospital then engaged in additional acts of intentional fraud to cover up and hide what it had done.

Plaintiffs' Amended Complaint at 13–14. *See supra* page 613, n. 2.

(e) Intentional infliction of emotional distress, limited to Plaintiffs' allegations regarding Columbia's conduct after Garcia's injury on July 11, 1995. *See supra* pages 612–613.

(f) Civil conspiracy.

(g) Punitive damages.

Plaintiffs are further ORDERED to submit their revised amended complaint to the district clerk's office for filing no later than March 6, 1998. It is so ORDERED.