Affirmed and Opinion filed June 6, 2002









Affirmed and Opinion filed June 6, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-01255-CV

____________

 

MANUELA RUIZ and ROBERT RUIZ, Appellants

 

V.

 

WALGREEN CO., Appellee

 



 

On
Appeal from the 122nd District Court

Galveston County, Texas

Trial
Court Cause No. 99-CV-0517

 



 

O P I N I O N

Appellants, Manuela Ruiz and her husband, Robert Ruiz, appeal
the dismissal of their claims against Walgreen Co. (AWalgreen@) for injuries Manuela allegedly
sustained by ingesting medication from a misfilled prescription.  The trial court dismissed their claims for
failing to file an expert report under the Medical Liability and Insurance
Improvement Act (AMLIIA@ or AAct@).  Concluding that (1)
the MLIIA governs the Ruizes= cause of action and (2) the Ruizes were required to file an
expert report, we affirm the judgment of the trial court. 








Factual and Procedural Background

The following facts were drawn from the Ruizes= second amended petition and the
clerk=s record.  Walgreen has generally denied the Ruizes= allegations. 

Manuela presented a prescription for AMagsal@ to a Walgreen pharmacist to be
filled.  However, he misfilled the
prescription with ANizoral.@  After examining the
medication at the pharmacy, Manuela told the pharmacist she thought he had made
a mistakeCthat the prescription had been
improperly filled.  The pharmacist
assured Manuela he had not made a mistake, explaining that the drug looked
different because it was a generic substitute. 
Later that evening, when Manuela opened the medication at home, she
again became concerned and telephoned the pharmacist.  He encouraged Manuela to take the medication,
explaining again that it only appeared to be the wrong medication because it
was a generic substitute.  Manuela took
the medication and subsequently refilled the prescription.  

During the time Manuela was taking the medication, she felt
weak and nauseous.  She also vomited and
experienced dry heaves.  Ultimately, due
to these symptoms, Manuela was hospitalized for three days.  The Ruizes= family physician and the consulting
physician determined that her condition was caused by an overdose of the incorrectly
filled prescription Nizoral.  The
pharmacist later admitted to Manuela that he had misfilled the
prescription.  








The Ruizes gave notice of their claims to Walgreen Apursuant to the provisions of Art.
4590i, ' 4.01(d) of the Medical Liability and
Insurance Improvement Act . . . . @ The Ruizes then filed suit against
Walgreen.  Their second amended petition
alleges the following in the alternative: (1) Anegligent acts and omissions,@ i.e., the pharmacist failed
to read the prescription correctly and failed to verify the correct
prescription;  (2) Abreach of express and implied
warranties@; and (3) Abreach of contract.@ 
The petition also alleged that these Anegligent acts and omissions@ caused Manuela to become seriously
ill and suffer Aextensive, debilitating and life threatening injuries which
severely diminished her enjoyment of life and her life expectancy.@ 
Finally, the petition alleged that A[p]rior to the incident . . . Ruiz wa
snot [sic] suffering from any of the symptoms that resulted from the incorrect
filling of the prescription that was also an overdose.@

The Ruizes did not file an expert report as required by the
Act, and appellee filed a motion to dismiss for the Ruizes= failure to do so.  After an initial dismissal and reinstatement,
the Ruizes again failed to file an expert report, and, after a second motion to
dismiss, the trial court dismissed the case with prejudice.   

Discussion

On appeal, the Ruizes give two reasons they claim an expert
report was not required:  (1) the MLIIA
is not intended to govern any other area of the Texas legal system or tort law,
and accordingly, their causes of action for breach of warranty and deceptive
trade practices are governed by the common law or the Deceptive Trade Practices
Act (ADTPA@), which do not require an expert
report; and (2) if the MLIIA does apply to their case, the case is excepted
from the expert report requirement because res ipsa loquitur applies to
the pharmacist=s negligence and no expert is
needed.  Before addressing these claims,
we will review the pertinent portions of the MLIIA. 

The Medical Liability and Insurance Improvement Act








In response to a dramatic increase in health care liability
claims in the 1970s, the Texas Legislature passed the MLIIA to curtail a Amedical malpractice insurance crisis
in the State of Texas.@  Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 1.02 (Vernon Supp. 2001).  To thwart an adverse impact on the
availability of medical care and to prevent rising costs created by the lawsuit
crisis, a plaintiff alleging medical malpractice must comply with several
procedural requirements of the Act, one of which is to provide each physician
or health care provider with an expert report giving a fair summary of the
expert=s opinions regarding the applicable
standard of care and the causal nexus between the health care provider=s failure to meet the applicable
standard of care and the plaintiff=s injuries.  Id. ' 13.01(d)(1), (r)(6).  

For the provisions of the Act to govern a claim, the cause of
action must meet the Act=s definition of a Ahealth care liability claim@:

>Health care liability claim= means a cause of action against a
health care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care or health care or
safety which proximately results in injury to or death of the patient, whether
the patient=s claim or cause of action sounds in
tort or contract.

Id. ' 1.03(a)(4).  Thus, a health care liability claim is one
(1) brought against a health care provider, (2) for, among other things, a
departure from accepted standards of medical care or health care (3) which
proximately results in injury, (4) whether the patient=s claim sounds in tort or contract.

A pharmacist is a health care provider for purposes of the
Act.[1]  Id. ' 1.03(a)(3).  However, the Act controls only Athose activities limited to the
dispensing of prescription medicines which result in health care liability
claims,@ or those actions which relate to the
essence of what a pharmacist does: 
filling prescriptions.  Id.
' 1.03(a)(7).

The Ruizes= claims on
Appeal

The Ruizes have two claims on appeal.  Their first claim is that the Act does not
apply because this is not a medical malpractice claim or a claim for the
departure from an accepted standard of care. 
Instead, the Ruizes claim that they have alleged DTPA and breach of
warranty claims.  








We have reviewed their live petition and do not find either
cause of action.  The petition does not
allege what implied warranties were made, much less what express warranties
were made.  In fact, other than the
mention of the word Awarranty@ in the paragraph of their pleading in which they set out
their causes of action, Awarranty@ appears nowhere in the petition, nor is there any mention of
a promise or guarantee.  

Likewise, the DTPA is never mentioned and there are no
allegations that the pharmacist=s actions violated particular sections of the DTPA, nor does
the petition contain any language from the DTPA (such as alleging that Walgreen
represented that the goods or services had characteristics, uses or benefits
that they did not have).  See Tex. Bus. & Com. Code Ann. '' 17.46, 17.50 (Vernon 1987 &
Supp. 2002).  We find no DTPA
allegations, and find no claim other than a straightforward medical malpractice
claim.  See, e.g., MacGregor Med. Assoc.
v. Campbell, 985 S.W.2d 38, 40 (Tex. 1998) (per curiam); Gomez v. Matey,
55 S.W.3d 732, 734-35 (Tex. App.CCorpus Christi 2001, no pet.); Nguyen
v. Kim, 3 S.W.3d 146, 149-50 (Tex. App.CHouston [14th Dist.] 1999, no pet.).








In an attempt to convince us that they are right, the Ruizes
cite us to several cases in which courts have found separate claims.  However, these cases involved separate,
independent torts that were committed by a medical professional.  For example, in one case, the court found
ordinary negligence when an employee of a home health care service company
negligently placed a supply bag in such a way that it later fell on the
plaintiff and further injured him.  See
Rogers v. Crossroads Nursing Serv., Inc., 13 S.W.3d 417, 419 (Tex. App.CCorpus Christi 1999, no pet.).  We do not have a separate, independent
negligent act here as in Rogers. 
In another case, a plastic surgeon guaranteed the results of his
surgery, promised very specific results, and knowingly misrepresented his
skills and the results he could achieve. 
The plaintiff alleged breach of express and implied warranties and also plead
DTPA claims, mentioning specific DTPA provisions.  See Sorokolit v. Rhodes, 889 S.W.2d
239, 242 (Tex. 1994).  Again, as we have
already stated, unlike the plaintiff in Sorokolit, the Ruizes have not
pleaded these claims.  In yet another
case, the plaintiffs alleged that the hospital improperly placed a tube in a
patient causing him to suffocate, and then concealed his death for several days
to hide the hospital=s negligence.  See
Garcia v. Columbia Med. Ctr., 996 F. Supp. 605, 610 (E.D. Tex. 1998).  Once again, we do not have a separate
fraudulent act unrelated to the medical care.

In short, this case involves no separate fraudulent act and
no separate tort.  This is a medical
malpractice case in its purest form.  It
derives from the pharmacist=s alleged negligent actions that were inextricably related to
his professional duty of dispensing medication; regardless of what the Ruizes
would like this case to be, it is a claim that the pharmacist departed from an
accepted medical standard.

Finally, the Ruizes give us one other reason the Act does not
apply to this case.  They argue that,
even if the Act applies, an expert report is unnecessary because this is a
matter  Aplainly within the common knowledge
of laymen.@ 
See Martin v. Petta, 694 S.W.2d 233, 239 (Tex. App.CFort Worth 1985, writ ref=d n.r.e.).  They point out that they invoked the doctrine
of res ipsa loquitur below and that the doctrine is incorporated into
the Act in article 4590i, section 7.01. 
That section limits application of the doctrine to Athose cases to which it has been
applied by the appellate courts of this state as of the effective date of this
subchapter.@ 
Further, the doctrine applies only when the nature of the alleged
malpractice and injuries are plainly within the common knowledge of laymen,
requiring no expert testimony.  Haddock
v. Arnspiger, 793 S.W.2d 948, 951 (Tex. 1990).  The Ruizes point to no pre-1977 cases
applying the doctrine to substitution of a prescribed medication, and do not
explain how laymen would know that substitution in this case was improper.

But, assumingCwithout decidingCthat res ipsa loquitur does
apply and the Ruizes would not need an expert to testify that it is
unacceptable for a pharmacist to give a patient a different medication than the
one prescribed, the Ruizes still need an expert.  They would still be required to prove they
were injured, and that the pharmacist=s negligence proximately caused their
injuries.  In addition, because they also
are claiming that the pharmacist gave Manuela too great a dosage of Nizoral,
they would need an expert to testify that the amount was an overdose and that
the overdose caused Manuela=s injuries.








Conclusion

In summary, we conclude that the MLIIA applied to this case
and that the Ruizes were required to file an expert report.  Since they failed to file a report, the trial
court did not abuse its discretion in dismissing this claim.  We affirm the judgment of the trial
court.  

 

 

/s/        Wanda McKee
Fowler

Justice

 

 

Judgment rendered and Opinion filed June 6, 2002.

Panel consists of Chief Justice Brister and Justices Fowler and Seymore.

Publish C Tex.
R. App. P. 47.3(b).











[1]  A>Health care provider= means
any . . . pharmacist, . . . acting in the course and scope of his employment.@  Id. ' 1.03(a)(3).